UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OKLAHOMA

Filed/Docketed
Nov 20, 2018

| | |
|---|---|
| IN RE ) | |
| ) | |
| **RENFROW, MIRANDA KRISTIN,** ) | Case No. 17-10385-R |
| ) | Chapter 7 |
| **Debtor.** ) | |

| | |
|---|---|
| **MIRANDA KRISTIN RENFROW** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Adv. No. 17-1027-R |
| ) | |
| **COURTNEY GROGAN,** ) | |
| **SUCCESSOR TRUSTEE OF THE** ) | |
| **JOE C. COLE REVOCABLE** ) | |
| **TRUST, UNDER TRUST AGREE-** ) | |
| **MENT DATED MARCH 28, 2002,** ) | |
| **and ATKINSON, HASKINS,** ) | |
| **NELLIS, BRITTINGHAM, GLASS** ) | |
| **& FIASCO, P.C.,** ) | |
| ) | |
| **Defendants.** ) | |

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Before the Court is the Defendants' Motion for Summary Judgment (Adv. Doc. 43) and brief in support thereof (Adv. Doc. 44) (collectively "Defendants' Motion") filed by Defendants Courtney Grogan, Successor Trustee of The Joe C. Cole Revocable Trust, under Trust Agreement Dated March 28, 2002 ("Grogan"), and Atkinson, Haskins, Nellis, Brittingham, Glass & Fiasco, P.C. ("AHN") (collectively,"Defendants") on September 11, 2018. Plaintiff/Debtor Miranda Kristin Renfrow ("Renfrow") filed her response brief (Adv.

Doc. 48) on September 24, 2018, and Defendants filed their reply brief (Adv. Doc. 54) on October 9, 2018.  The Court heard oral arguments on November 13, 2018.

### I.      Jurisdiction

The Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334, 157(a), and 157(b)(1) and (2), and Local Civil Rule 84.1(a) of the United States District Court for the Northern District of Oklahoma.  As explained below, the Rooker-Feldman doctrine does not deprive this Court of jurisdiction over this adversary proceeding.

### II.     Summary judgment standard

"Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986), *quoting former* Fed. R. Civ. P. 56(c).  "[A]t the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  Reasonable inferences that may be made from the proffered evidentiary record should be drawn in favor of the non-moving party.  See Adams v. American Guarantee and Liability Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000).  If two reasonable fact-finders could reach different conclusions or "ultimate inferences" from the facts, summary judgment is not warranted.  See Luckett v. Bethlehem Steel Corp., 618 F.2d 1373, 1382 (10th Cir. 1980) (citations omitted).

**III.    Contentions of the parties**

In her Amended Complaint, Renfrow alleges that Defendants, among other things, continued to prosecute an action in Tulsa County District Court to collect prepetition debts, and obtained a jury verdict and judgment that imposed personal liability on Renfrow for prepetition debts (the "Judgment"), all in violation of the discharge injunction. She seeks a finding of civil contempt under 11 U.S.C. § 105(a) (which provides bankruptcy courts with the equitable power to enforce and remedy violations of substantive provisions of the Bankruptcy Code, to enforce and implement court orders, and to prevent an abuse of process), and sanctions in the form of damages for Defendants' alleged violations of the Court's discharge order and of 11 U.S.C § 524(a)(2).

Defendants contend they are entitled to summary judgment for the following reasons: (1) This Court lacks jurisdiction under the Rooker-Feldman doctrine; (2) the jury verdict returned in the state court litigation bars Renfrow from relitigating whether the debt reduced to judgment was discharged; (3) Grogan is not liable because she acted on the advice of her counsel, AHN, and did not intend to violate the discharge injunction; and (4) Renfrow has not mustered sufficient facts to show that Defendants intended to violate the discharge injunction.

**IV.    Analysis**

  A.    The Rooker-Feldman doctrine does not apply.

Defendants contend that this Court lacks subject matter jurisdiction over Renfrow's claim under the Rooker-Feldman doctrine. The Rooker-Feldman doctrine "precludes a

losing party in state court who claims of injury caused by the state-court judgment from bringing a case seeking review and rejection of that judgment in [a lower] federal court." Gray v. Nussbeck (In re Gray), 573 B.R. 868, 875 (Bankr. D. Kan. 2017) (internal quotation marks and citation omitted).

Because Renfrow commenced this adversary proceeding seeking to hold Defendants liable for violating her discharge *prior* to the entry of the Judgment, she was not a "state-court loser" at that time. The Rooker-Feldman doctrine does not strip a federal court of properly-assumed jurisdiction if a state court thereafter enters a judgment on the same or a similar matter.

In Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005), the United States Supreme Court held:

> When there is parallel state and federal litigation, *Rooker–Feldman* is not triggered simply by the entry of judgment in state court. This Court has repeatedly held that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." [Citations omitted]. Comity or abstention doctrines may, in various circumstances, permit or require the federal court to stay or dismiss the federal action in favor of the state-court litigation. [Citations omitted]. But neither *Rooker* nor *Feldman* supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains *sub judice* in a federal court.
>
> Disposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law. The Full Faith and Credit Act, 28 U.S.C. § 1738 . . . requires the federal court to "give the same preclusive effect to a state-court judgment as another court of that State would give." [Citations omitted]. Preclusion, of course, is not a jurisdictional matter. See Fed. Rule Civ. Proc. 8(c) (listing res judicata as an affirmative defense). In parallel litigation, a federal court may be bound to recognize the claim- and issue-preclusive effects of a state-court judgment, but federal jurisdiction over

>an action does not terminate automatically on the entry of judgment in the state court.

Exxon, 544 U.S. at 292-93. Accordingly, the Court's jurisdiction over this adversary proceeding remains intact.

> B. Defendants have not established their defense of issue preclusion as a matter of law.

Defendants argue that Renfrow's claims for violating the discharge injunction fail as a matter of law because she is precluded from arguing that the debt reduced to Judgment was discharged. The Full Faith and Credit Act requires this Court to give the same "full faith and credit" to a judgment of a state court as such judgment is given "by law or usage in the courts of such State." 28 U.S.C. § 1738. When a federal court evaluates the preclusive effect of a state court judgment, it looks "to the preclusion law of the State in which the judgment was rendered." Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985). The preclusive effect of the Judgment is therefore governed by Oklahoma law.

Under Oklahoma's doctrine of issue preclusion, the party relying on the doctrine of issue preclusion must establish: (1) a valid, final judgment on the merits in prior litigation; (2) the issue sought to be precluded is identical to one previously litigated; (3) the issue was actually litigated and necessarily determined in the prior proceeding; and (4) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the previous forum. See Salazar v. City of Oklahoma City, 1999 OK 20, 976 P.2d 1056, 1060–61; Nealis v. Baird, 1999 OK 98, 996 P.2d 438, 458 and n.86. Defendants have not established these elements.

First, the summary judgment record presented by Defendants is insufficient to support a conclusion that Renfrow is precluded from pressing her violation of discharge claims as a matter of law. "Any controversy over the meaning and preclusive force to be accorded [to the prior court's decision] must be resolved by resort *solely to the face of the judgment roll*." Salazar, 976 P.2d at 1061 (emphasis original). "Those who rely on a judgment for its issue-preclusive force (or for any other consequence consistent with an earlier adjudication's legal efficacy) are duty-bound to produce—as proof of its terms, effect and validity—the *entire* judgment roll for the case which culminated in the decision invoked as a bar to relitigation." Id. (emphasis original). "Without that roll no court can determine with the requisite degree of certainty (1) what claims were pressed for adjudication and (2) which of the tendered issues were actually decided." Id. at 1061-62. Defendants have not produced the entire judgment roll.

Second, "[a] final judgment is one in which no appeal has been perfected within the time allotted by law or one in which an appeal has been properly perfected and acted upon by the highest court whose review has been sought." Nealis, 996 P.2d at 459. Renfrow has perfected an appeal of the Judgment, and the appeal is pending. Thus, the Judgment is not final for the purposes of issue preclusion.

Third, there are genuine issues of material fact concerning whether the Judgment is valid. To the extent it imposes personal liability upon Renfrow for prepetition debt, the Judgment is void by operation of law under section 524(a)(1). See, e.g., Gray, 573 B.R. at 878-79. The summary judgment record does not establish that the debt reduced to Judgment

did not arise prepetition, and there are genuine issues of material fact as to the nature of the debt.

Fourth, there are genuine issues of material fact concerning whether Renfrow had a "full and fair opportunity to litigate" the dischargeability of the alleged "transfers" of accounts receivable and patient charts.

> The circumstances to which consideration should be given in determining whether a party has had a full and fair opportunity to litigate an issue in a prior action are set forth in the RESTATEMENT (SECOND) OF JUDGMENTS § 28, which states:
> ...
>> "Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:
>>
>> (5) There is a clear and convincing need for a new determination of the issue ... (c) because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action."

Salazar, 976 P.2d at 1061 n.7.  Based upon the summary judgment record, a fact-finder could reasonably infer that Renfrow did not have the opportunity to fully and fairly litigate the nature or timing of the alleged fraudulent transfers of accounts receivable or patient records because Defendants insisted that they were not seeking recovery of any prepetition transfers, leading Renfrow to believe that the only transfers at issue were those Envision made to Renfrow post-petition from Envision's bank account.

For these reasons, among others, Defendants are not entitled to summary judgment on their issue preclusion defense.

  C.  Grogan is not entitled to summary judgment on her "advice of counsel" defense.

Grogan argues that because all actions she took in the state court litigation were at the direction and advice of AHN, Renfrow cannot show that Grogan "personally had any intention of collecting discharged debts from Renfrow." Defendants' Motion at 17. Advice of counsel is not a defense to a civil contempt charge prosecuted under § 105(a) of the Bankruptcy Code. See In re Bock, 297 B.R. 22, 30 (Bankr. W.D.N.C. 2002); Peyrano v. Sotelo (In re Peyrano), 558 B.R. 451, 459 (Bankr. E.D. Okla. 2016), *aff'd*, 15-08011, 2017 WL 2731299 (B.A.P. 10th Cir. June 26, 2017)(a creditor's good faith or reliance on erroneous legal advice is not relevant to whether a violation of the discharge injunction occurred). It is undisputed that Grogan authorized AHN to pursue Renfrow for alleged fraudulent transfers. There is no evidence that she did not intend AHN to take the actions it took on her behalf during the course of the state court litigation.

  D.  Renfrow has presented sufficient evidence to allow a reasonable fact finder to conclude that Defendants intended to take the actions that may have violated the discharge injunction.

Defendants misconstrue the nature of the intent element of civil contempt under § 105(a) of the Bankruptcy Code. "To hold a party in contempt, the burden rests with the movant to show by clear and convincing evidence that the creditor (1) had actual or constructive knowledge of the discharged debt and (2) *intended the actions which were taken in violation of the injunction.*" Peyrano, 558 B.R. at 457 (emphasis added); Gray, 573 B.R.

8

at 880.  It is undisputed that Defendants had actual knowledge of Renfrow's bankruptcy and discharge.  Defendants do not argue that any of the actions they took during the litigation were unintentional or accidental.

Renfrow need not prove that Defendants had any specific intent to violate the discharge. See Johnson v. Smith (In re Johnson), 501 F.3d 1163, 1172 (10th Cir. 2007) (specific intent is not required to establish a willful violation of the automatic stay); Cherry v. Arendall (In re Cherry), 247 B.R. 176, 187 (Bankr. E.D. Va. 2000) (the same standard is used to determine willfulness of stay and discharge violations); In re Slater, 573 B.R. 247, 256 (Bankr. D. Utah 2017) (the creditor's good faith is not relevant to determining whether act violated the discharge injunction). Simply stating, over and over, "we do not intend to collect prepetition debt," is not dispositive of whether the debt reduced to Judgment arose prepetition or postpetition.  Moreover, "conduct that facially appears permissible may still violate § 524(a)(2) if its objective effect is prohibited, *i.e.*, if it really serves to pressure the debtor to pay a discharged debt."  In re Paul, 534 F.3d 1303, 1313 (10th Cir. 2008).

The nature and timing of the alleged fraudulent transfers is a disputed issue of fact. The record on summary judgment contains some evidence (the Transcript of the Rule 2004 Examination of Renfrow, for instance) that the patient charts were "transferred" to other doctors well before Renfrow filed her bankruptcy petition.  In addition, when Grogan filed her Second Amended Petition, seeking a judgment *in personam* against Renfrow, it did not unambiguously exclude from that judgment recovery on the prepetition breach of promise

9

and unjust enrichment claims. It is undiputed that those claims were not dismissed until a month later, and only after this adversary proceeding was filed.

Whether Defendants' conduct violated Renfrow's discharge depends upon the resolution of facts that are in genuine dispute.

## V. Conclusion

For the reasons set forth above, Defendants' Motion is denied.

**SO ORDERED** this 20th day of November, 2018.

DANA L. RASURE, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT