UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OKLAHOMA

Filed/Docketed
Nov 26, 2018

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| RENFROW, MIRANDA KRISTIN, | ) | Case No. 17-10385-R |
| | ) | Chapter 7 |
| Debtor. | ) | |

| | | |
|---|---|---|
| MIRANDA KRISTIN RENFROW | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 17-1027-R |
| | ) | |
| COURTNEY GROGAN, SUCCESSOR TRUSTEE OF THE JOE C. COLE REVOCABLE TRUST, UNDER TRUST AGREE-MENT DATED MARCH 28, 2002, and ATKINSON, HASKINS, NELLIS, BRITTINGHAM, GLASS & FIASCO, P.C., | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**ORDER DENYING DEFENDANTS' MOTION TO DISQUALIFY**

Before the Court is the Defendants' Motion to Disqualify the Honorable Dana Rasure (Doc. 69) ("Motion to Disqualify") filed on November 21, 2018, by Defendants Courtney Grogan, Successor Trustee of the Joe C. Cole Revocable Trust ("Grogan") and Atkinson, Haskins, Nellis, Brittingham, Glass & Fiasco, P.C. ("AHN") (collectively, "Defendants" or "Movants"), and Plaintiff's Response thereto (Doc. 72) filed on November 26, 2018.

I.  **Jurisdiction**

The Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334, 157(a), and 157(b)(1) and (2), and Local Civil Rule 84.1(a) of the United States District Court for the Northern District of Oklahoma.

II. **Background**

Trial on the merits in this adversary proceeding is set for November 29, 2018. Plaintiff Miranda Renfrow filed her original complaint against Defendants in August 2017, and her amended complaint in January 2018. In her amended complaint, Renfrow alleges that after receiving a Chapter 7 discharge, Defendants, among other things, continued to prosecute an action in Tulsa County District Court (the "Grogan Action") to collect prepetition debts. The Grogan Action was tried in December 2017, and Grogan obtained a jury verdict and judgment that imposed personal liability on Renfrow under the Uniform Fraudulent Transfer Act ("UFTA") (the "Judgment"). In her closing argument, Grogan, through her counsel, asked the jury to find Renfrow liable for transferring particular assets from her wholly owned corporation to herself with the intent to defraud her creditors. Renfrow contends that those transfers occurred, if at all, prior to her filing bankruptcy. In this proceeding, Renfrow charges Defendants of acting in contempt of the discharge order and in violation of 11 U.S.C. § 524(a)(2), and seeks sanctions under 11 U.S.C. § 105(a)[1] in

---

[1] Section 105(a) of the Bankruptcy Code provides bankruptcy courts with the equitable power to enforce and remedy violations of substantive provisions of the Bankruptcy Code, to enforce and implement court orders, and to prevent an abuse of process.

the form of damages. Defendants strenuously deny that they took any action to collect prepetition debts.

On September 11, 2018, Defendants filed a motion for summary judgment, seeking dismissal of this proceeding for lack of jurisdiction under the Rooker-Feldman doctrine, or, in the alternative, judgment in Defendants' favor on the ground that the jury verdict and Judgment barred Renfrow from relitigating whether the debt reduced to judgment was discharged debt. Defendants also argued that Renfrow could not show that Defendants intended to violate the discharge injunction. Finally, Grogan, individually, sought judgment in her favor on the basis that she acted on the advice of her counsel, AHN, and therefore did not intend to violate the discharge injunction.

On November 13, 2018, the Court heard oral argument on the summary judgment motion and Renfrow's response thereto. On November 20, 2018, the Court entered an order denying summary judgment. The Court concluded that under the Exxon Mobil case decided by the United States Supreme Court,[2] the Rooker-Feldman doctrine was inapplicable because Renfrow had commenced this adversary proceeding prior to the entry of the Judgment. The Court also concluded that under Oklahoma issue preclusion law, Defendants had not established all the elements required to preclude Renfrow from seeking a declaration from this Court that Defendants' conduct in the Grogan Action violated this Court's discharge injunction. Elements not established by undisputed facts and applicable law included the

---

[2] Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005).

requirements that the Judgment be valid and final, and that Renfrow had a full and fair opportunity to litigate. In addition, Defendants had not included the judgment roll of the Grogan Action in their record on summary judgment.

Later on November 20, 2018, at a scheduled final pretrial conference, the Court instructed the parties to submit a revised proposed Joint Pretrial Order to take into account the issues of fact and law eliminated, narrowed, or clarified in the order denying summary judgment. Defendants orally requested a continuance of the trial because they had not yet obtained the full transcript of the trial in the Grogan Action. The Court found the motion to continue the trial untimely because Defendants had asserted issue preclusion as a defense as early as January 2018, and knew or should have known that it was their evidentiary burden to tender the entire judgment roll to establish preclusion.[3]

On November 21, 2018, Defendants filed their Motion to Disqualify.

---

[3] See Defendants' Response and Objection to Plaintiff's Motion to Amend Complaint (Doc. 27) filed on January 29, 2018, wherein Defendants argued:

> The *publicly available record in the underlying case* demonstrates Defendants neither sought nor recovered any amounts for Plaintiff's pre-petition conduct at the trial of the underlying case, and Plaintiff cannot ever prove Defendants sought such damages. As such, Plaintiff's proposed amendment fails on its face, and Plaintiff should be denied leave to amend her Complaint to add claims that Defendants attempted to collect against Plaintiff for pre-petition conduct at trial.

Id. at 3-4 (emphasis added).

**III.     Movants' Allegations**

Movants assert that the undersigned judge must recuse under 28 U.S.C. § 455(a) because her "impartiality might reasonably be questioned." They contend that certain findings of fact the Court made after a full evidentiary hearing in another adversary proceeding, <u>Miranda Kristen Renfrow vs. Carrie Pettigrew and Thomas Mortensen</u>, Adv. No. 17-1038 (the "Pettigrew Proceeding"), demonstrate that the Court has predetermined the veracity of a key witness in this case, namely Renfrow's counsel, Ron Brown. Motion, ¶¶ 6, 17-23. In denying defendant Mortensen's motion to vacate the entry of default against him, the Court found Brown's testimony that he mailed the summons and complaint to Mortensen credible and Mortensen's testimony that he did not receive the complaint not credible.[4]

---

[4]In the Pettigrew Proceeding, Mortensen testified that he did not receive a dismissal of claims in the Pettigrew state court litigation, notwithstanding Brown's certificate of service thereof. Pettigrew Order at 10 n.28. Mortensen also denied receiving the summons and complaint Renfrow filed to commence the Pettigrew Proceeding, notwithstanding Brown's return of service which Mortensen deemed a "sham" affidavit. <u>Id</u>. at 19 & n.65. The Court was required to weigh the evidence, and the credibility of both Brown and Mortensen, to determine whether Brown had filed "sham" affidavits. The Court found in both instances that it had no reason to doubt the accuracy of Brown's certificates, stating "Brown practices before this Court on a regular basis and has never given the Court any reason to doubt his integrity." <u>Id</u>. at 10 n.28 and 19 n.65. Further, the Court found that Mortensen's denial of receipt of the dismissal and the complaint was not convincing in that Mortensen stated that he often set aside his unopened mail for extended periods of time, and claimed that he routinely failed to receive mail that lawyers certified had been sent to him. <u>Id</u>. at 20 n.67. Moreover, Mortensen's client, Pettigrew, testified that she had reviewed the complaint with Mortensen in December 2017. <u>Id</u>. at 21.

Movants also contend that in the Pettigrew Proceeding the undersigned "predetermined Renfrow hired Brown because she needed to 'enforce her discharge' in the Grogan Action." Motion at 3, ¶ 8-9.[5]

In addition, Movants contend that in its order denying summary judgment in this case, the undersigned "*sua sponte* raised the issues of (1) whether Renfrow was given a full and fair opportunity to litigate the dischargeability of the alleged post-petition transfers in the Grogan Action and (2) whether the judgment in the Grogan Action is valid." Motion at 4, ¶ 11.[6]

Further, Movants argue that at the pretrial conference, the undersigned informed the parties that "she intends to re-try the UFTA claim from the Grogan Action *in toto* and will allow Brown to present hearsay testimony on issues relating to the Grogan Action verdict's

---

[5]In the Pettigrew Order, the Court found that "Renfrow retained Brown to defend against [the Second Amended Complaint in the Grogan Action] and to enforce her discharge." Pettigrew Order at 10. Movants complain that the Court made this finding despite the fact that Renfrow did not testify at the Pettigrew Proceeding. Renfrow's testimony was not necessary to find that Renfrow hired Brown for these purposes. After Renfrow obtained her discharge and her bankruptcy case was closed, Brown entered an appearance in the Grogan Action on behalf of Renfrow and filed Renfrow's answer to the Second Amended Complaint. Less than a week later, Brown filed, on behalf of Renfrow, a Complaint for Violation of the Permanent Discharge Injunction to commence this proceeding. These facts are matters of public record and were not disputed.

[6]Defendants urged summary judgment on the basis of issue preclusion. The Court determined that Defendants, who have the burden of proving issue preclusion, did not make a showing sufficient to establish all essential elements of their defense.

validity without awaiting the trial transcript to show what actually happened at trial." Motion at 5, ¶ 13.[7]

## IV. Analysis

A judge is required to disqualify herself "in any proceeding in which [her] impartiality might reasonably be questioned."[8] The test under § 455(a) in this Circuit is "whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality."[9] The Tenth Circuit has stressed that the statute must not be so broadly construed to require recusal "upon the merest unsubstantiated suggestion of personal bias or prejudice."[10] Even if the judge is "exceedingly ill disposed" towards a party, if her opinion could be seen by a third party as reasonably formed from evidence presented at trial or based

---

[7] At the pretrial conference, the Court reviewed and revised the parties' proposed pretrial order (submitted on November 1, 2018), line by line, in order to eliminate non-issues and to clarify the scope of remaining issues based upon the applicable law. Also, some issues and contentions were superceded by denial of summary judgment. Because Renfrow alleges that Grogan's closing argument at trial constituted an act to collect prepetition debt, an obvious threshold factual issue is whether the transfers outlined by Grogan's counsel in closing argument occurred prepetition or postpetition. The closing argument has been transcribed and is already in the record. Evidence of the nature and timing of the transfers referred to in closing argument may be in the record of the Grogan Action, or it may exist independent of that record. Nothing said at the pretrial conference should be interpreted to preclude either party from objecting to inadmissible hearsay.

[8] 28 U.S.C. § 455(a). Section 455 is made expressly applicable to bankruptcy judges by Bankruptcy Rule 5004(a).

[9] United States v. Cooley, 1 F.3d 985, 993 (10th Cir. 1993) (internal quotation marks and citations omitted).

[10] Id. (internal quotation marks and citations omitted).

on prior proceedings, no basis for recusal exists.[11] A judge has as strong a duty to sit when there is no reason to recuse as she does to recuse when the law and facts require recusal.[12]

Movants suggest that the Court is partial toward Brown and impartial toward Movants. Generally, recusal on the grounds of partiality may be required when the judge forms opinions about the litigants based on information obtained outside the course of judicial proceedings, *i.e.*, from an "extrajudicial source." Recusal is not required simply because the judge has ruled against the movant in pretrial proceedings. "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion. [Citation omitted.] . . . Almost invariably, they are proper grounds for appeal, not for recusal."[13] A judge is not required to recuse on account of –

> opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, . . . unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.[14]

---

[11]Liteky v. United States, 510 U.S. 540, 550-51 (1994).

[12]See Hinman v. Rogers, 831 F.2d 937, 939 (10th Cir. 1987). See also In re Allied-Signal, Inc., 891 F.2d 967, 970 (1st Cir. 1989) (judges must be circumspect in recusing so as to discourage and prevent judge shopping by litigants unhappy with adverse rulings by the presiding judge).

[13]Liteky v. United States, 510 U.S. 540, 555 (1994) (citation omitted).

[14]Id. (emphasis original).

When a judge's opinion on the merits of a case derives from the evidence presented, and no extrajudicial source is involved, unfavorable judicial rulings can "only in the rarest circumstances evidence the degree of favoritism or antagonism required" for recusal.[15]

Movants' contention that the undersigned's impartiality might reasonably be questioned is based on the Court's finding of Brown's credibility in the Pettigrew Proceeding, its ruling on summary judgment in this proceeding, its conduct of the pretrial conference, and its denial of Movants' continuance request. All complaints of partiality and/or impartiality stem from findings, conclusions, and decisions made in the course and context of judicial proceedings and routine trial administration efforts. Movants have not established that any opinion the Court may have of the litigants or their counsel is derived from an extrajudicial source.[16]

Further, Movants have not established that a third-party observer, fully informed of all the relevant facts, would find that the Court's findings, conclusions, rulings, or conduct of pretrial proceedings, display the degree of deep-seated favoritism or antagonism required to question the impartiality of the undersigned judge. Adverse rulings "almost never

---

[15] Id.

[16] The Court's opinion of Brown's integrity was informed, as stated in the Pettigrew Order, solely by his past conduct in proceedings before the Court. Movants do not allege any extra-judicial knowledge or relationship, and there is none. Thus, the cases Movants cite in support of their Motion to Disqualify are inapposite. See Roberts v. Bailar, 625 F.2d 125 (6th Cir. 1980) (judge had a duty to recuse because judge knew the defendant and opined that he was an "honorable man" who "would never intentionally discriminate against anyone"); Hadler v. Union Bank & Trust Co. of Greensburg, 765 F.Supp. 976 (S.D. Ind. 1991) (judge was required to recuse due to long standing friendship with the key witness who had a financial stake in the outcome of the proceeding).

constitute a valid basis for recusal."[17]  Further, a court's comments on the merits of the case based on its interpretation of applicable law, or comments concerning a party's failure to comply with the court's rules or orders, or comments made to focus parties on the elements of their claims and defenses, or efforts to narrow the issues for trial, are necessary for the efficient administration of a proceeding, and are not grounds for recusal.[18]

## V.     Conclusion

Movants have not demonstrated that the undersigned has formed opinions of the parties or counsel based upon an extrajudicial source, nor have they shown that the undersigned has displayed "such a high degree of favoritism or antagonism as to make fair judgment impossible."[19]  Accordingly, the Motion to Disqualify is **denied.**[20]

---

[17] Liteky, 510 U.S. at 555.

[18] See, e.g., Barna v. Haas (In re Haas), 292 B.R. 167, 178-81 (Bankr. S.D. Ohio 2003), and cases cited therein.

[19] Liteky, 510 U.S. at 555.

[20] The Motion to Disqualify is also untimely.  In the Tenth Circuit, a party must "act promptly once it knows of the facts on which it relies in its motion.  A promptly filed motion conserves judicial resources and alleviates the concern that it is motivated by adverse rulings or an attempt to manipulate the judicial process." United States v. Pearson, 203 F.3d 1243, 1276 (10th Cir. 2000); Willner v. Univ. of Kansas, 848 F.2d 1023, 1028-29 (10th Cir. 1988).
   Movants filed their Motion to Disqualify on the eve of trial after the Court denied their motion for summary judgment.  The Motion to Disqualify was filed long after Movants should have known that under Oklahoma preclusion law, they needed to present the entire judgment roll in the Grogan Action to establish their defense of issue preclusion.  Further, Movants were aware of the Court's finding concerning Brown's credibility in the Pettigrew Proceeding at least three weeks before they filed the Motion to Disqualify because they submitted the Pettigrew Order as one of their trial exhibits.

**SO ORDERED** this 26th day of November 2018.

*[Signature]*
DANA L. RASURE, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT