UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OKLAHOMA

Filed/Docketed
May 22, 2019

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| RENFROW, MIRANDA KRISTIN, | ) | Case No. 17-10385-R |
| | ) | Chapter 7 |
| Debtor. | ) | |

| | | |
|---|---|---|
| MIRANDA KRISTIN RENFROW | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 17-1027-R |
| | ) | |
| COURTNEY GROGAN, | ) | |
| SUCCESSOR TRUSTEE OF THE | ) | |
| JOE C. COLE REVOCABLE | ) | |
| TRUST, UNDER TRUST AGREE- | ) | |
| MENT DATED MARCH 28, 2002, | ) | |
| and ATKINSON, HASKINS, | ) | |
| NELLIS, BRITTINGHAM, GLASS | ) | |
| & FIASCO, P.C., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER DENYING MOTION TO STAY

Before the Court is the Defendants' Combined Motion to Stay Enforcement of Judgment Pending Appeal & To Fix the Amount of Supersedeas Bond (Doc. 108) ("Motion") filed by Defendants/Judgment Debtors Courtney Grogan, Successor Trustee of the Joe C. Cole Revocable Trust, Under Trust Agreement Dated March 28, 2002 ("Grogan") and Atkinson, Haskins, Nellis, Brittingham, Glass & Fiasco, P.C. ("AHN") (collectively "Movants" or "Defendants"), and the Response and Objection to Motion for Stay (Doc. 118) filed by Plaintiff/Judgment Creditor Miranda Kristin Renfrow ("Renfrow"). At the request

of Movants, an emergency hearing was held on May 13, 2019. Movants presented oral argument in support of their Motion, and the matter was taken under advisement.

## I.  Jurisdiction

The Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334, 157(a), and 157(b)(1) and (2), and Local Civil Rule 84.1(a) of the United States District Court for the Northern District of Oklahoma.

## II.  Background

Plaintiff Renfrow filed a petition for relief under Chapter 7 of the Bankruptcy Code on March 10, 2017 ("Petition Date").  On June 15, 2017, this Court entered an order discharging all prepetition debts and claims against Renfrow.  Accordingly, claims asserted by Grogan against Renfrow in the case of <u>Courtney Grogan, Successor Trustee of The Joe C. Cole Revocable Trust, under Trust Agreement dated March 28, 2002 v. Miranda K. Renfrow, D.O., an Individual, and Envision Medical and Surgical Eye Care, P.C., an Oklahoma Professional Corporation</u>, Case No. CJ-2016-2033 (the "State Court Case"), were discharged.  On August 1, 2017, Grogan, through her counsel AHN, amended her petition in the State Court Case to reassert the prepetition claims and add a new claim against Renfrow under the Uniform Fraudulent Transfer Act ("UFTA").

On August 26, 2017, Renfrow, through her counsel Ron Brown, commenced this proceeding by filing a Complaint against Grogan and AHN alleging that they violated Renfrow's discharge by filing the amended petition ("Discharge Violation Litigation"). Grogan and AHN continued prosecuting the UFTA claim against Renfrow. The State Court

Case proceeded to jury trial in December 2017, which resulted in a judgment against Renfrow in the amount of $89,500 ("UFTA Judgment"). In January 2018, Renfrow amended her Complaint in the Discharge Violation Litigation to assert that Grogan and AHN obtained the UFTA Judgment in violation of the discharge injunction. After the State Court denied Renfrow's motion for judgment notwithstanding the verdict, Renfrow timely appealed the UFTA Judgment and the JNOV denial to the Oklahoma Supreme Court. That appeal is pending.[1]

In the Discharge Violation Litigation, Grogan and AHN sought summary judgment in their favor, arguing that (1) this Court lacked jurisdiction under the Rooker-Feldman doctrine, (2) Renfrow was barred from relitigating whether the debt reduced to judgment was discharged, and (3) Grogan was not liable for any discharge violation because she acted upon advice of counsel. After careful consideration of all authorities cited by Defendants and after considerable research, the Court issued a detailed opinion denying summary judgment.[2]

First, the Court confirmed that its jurisdiction was intact. In 2005, the United States Supreme Court *reversed* a federal court that concluded that the Rooker-Feldman doctrine divested it of properly assumed jurisdiction when a state court, having heard the same issue, entered its judgment. In Exxon Mobil Corporation v. Saudi Basic Industries Corporation, the high court clarified that "[w]hen there is parallel state and federal litigation, Rooker-Feldman is not triggered simply by the entry of judgment in the state court. This Court has

---

[1]On May 14, 2019, Movants obtained a stay of the briefing deadlines in the UFTA Judgment appeal pending the conclusion of Movant's appeal of the Judgment in this case.

[2]Order Denying Defendants' Motion for Summary Judgment (Doc. 66).

repeatedly held that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction. . . . Disposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law."[3]

Second, this Court determined that Defendants could not establish their issue preclusion defense. Among other things, Renfrow's appeal of the UFTA Judgment was pending, and therefore it was not a "final judgment" for the purposes of issue preclusion.

Third, the Court explained that "advice of counsel" has been uniformly rejected as a defense to a civil contempt charge for discharge violations.

The day after the Court denied summary judgment, and one week before the trial in the Discharge Violation Litigation, Defendants sought recusal of the undersigned and moved to disqualify Brown as Renfrow's counsel, which motions were denied. On November 29 and 30, 2018, the Discharge Violation Litigation was tried on the merits. In their closing arguments and trial brief, Defendants reasserted their Rooker-Feldman and issue preclusion defenses. Defendants also claimed that Renfrow lost the right to claim a discharge violation because she asserted her discharge as a defense in the State Court Case, and that Renfrow failed to establish that Grogan "intended" to violate the discharge.[4]

---

[3] 544 U.S. 280, 292-93 (2005) (quotation marks and citations omitted).

[4] A discharged debtor is not required to prove that a creditor subjectively or specifically intended to violate the discharge in order to establish contempt. The test is whether the creditor knew the discharge injunction was applicable and *intended the actions* that violated the injunction. See Peyrano v. Sotelo (In re Peyrano), 558 B.R. 451, 459 (Bankr. E.D. Okla. 2016), aff'd, 15-08011, 2017 WL 2731299 (B.A.P. 10th Cir. June 26, 2017); In re Slater, 573 B.R. 247 (Bankr. D. Utah 2017). See also In re Johnson, 501 F.3d

On April 23, 2019, this Court issued a Memorandum Opinion, reciting detailed findings of fact that support the conclusion that Defendants acted in intentional or reckless disregard of Renfrow's discharge in proceeding with the State Court Case and in obtaining the UFTA Judgment.[5]  In the opinion, the Court addressed each of Defendants' defenses and legal arguments, and distinguished their authorities.  A Judgment was entered confirming that the UFTA Judgment was voided by 11 U.S.C. § 524(a)(1).  In order to provide complete relief to Renfrow, Defendants were directed "to obtain an order vacating the [UFTA] Judgment against Renfrow as void, to dismiss the [State Court Case] against Renfrow, and to take any other action reasonably requested by Renfrow to evidence the fact that the [UFTA] Judgment against her is and was void *ab initio*."[6]  In addition, a money judgment was entered "in favor of Renfrow and against Defendants, jointly and severally, for compensatory damages in the amount of $104,867 and punitive damages in the amount of $100,000."[7]

On May 7, 2019, Defendants filed their Notice of Appeal and Statement of Election, electing to have their appeal heard by the United States District Court for the Northern District of Oklahoma.[8]  On the same day, they filed their Motion seeking a stay of

---

1163, 1172-73 (10th Cir. 2007) (in the context of stay violations, "no specific intent is required").

[5] Memorandum Opinion (Doc. 101).

[6] Judgment (Doc. 102).

[7] Id.

[8] Doc. 106.

enforcement of the Judgment under Bankruptcy Rule 8007(a)(1)(A), and the approval of a supersedeas bond in the amount of $300,000 under Bankruptcy Rule 8007(a)(2)(B). Specifically, Defendants request (1) a stay of enforcement of the money judgment and (2) a stay of the mandatory injunction requiring Defendants to obtain an order from the State Court vacating the UFTA Judgment and dismissing the State Court Case. Renfrow opposes staying any part of the Judgment pending appeal.

### III. Discussion

Under Bankruptcy Rule 8007, granting a stay pending appeal is discretionary,[9] and "[t]he propriety of its issue is dependent upon the circumstances of the particular case."[10] In determining whether a stay pending appeal is appropriate, courts consider the traditional four-part standard applicable to preliminary injunctions, namely "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."[11] The burden is on the Movants to establish these factors in their favor. A "stay pending appeal is an extraordinary remedy and requires a substantial showing on the part of the movant."[12]

---

[9] Otero Rivera v. Lake Berkley Resort Master Assn, Inc. (In re Otero Rivera), 532 B.R. 425, 426 (Bankr. D. P.R. 2015).

[10] Nken v. Holder, 556 U.S. 418, 433 (2009) (quotation marks and citation omitted).

[11] Nken, 556 U.S. at 434.

[12] Otero Rivera, 532 B.R. at 427.

A. <u>Likelihood of success on appeal</u>

Movants have not made a strong showing that they are likely to succeed on appeal. In their Motion, Movants argue that the "Judgment involves numerous unsettled questions of law, including without limitation whether the Court has jurisdiction over this matter under the <u>Rooker-Feldman</u> doctrine and principles of comity and federalism."[13]  In the <u>Exxon Mobil</u> case cited above, the United States Supreme Court noted the frequent misapplication of the <u>Rooker-Feldman</u> doctrine by lower courts, and clearly and succinctly explained that when a federal court exercises concurrent jurisdiction with a state court on a particular matter, the entry of the state court judgment *does not* divest the federal court of its jurisdiction.[14]  Renfrow commenced the Discharge Violation Litigation prior to the entry of the UFTA Judgment, so under settled Supreme Court authority that is directly on point, the <u>Rooker-Feldman</u> doctrine is simply inapplicable.

The unpublished Tenth Circuit case relied upon by Defendants in support of their <u>Rooker-Feldman</u> argument, <u>Flanders v. Lawrence</u>, is distinguishable on its facts because unlike Renfrow, the debtor in that case did not complain of a discharge violation in federal court until *after* the state court judgment was entered and *after* that judgment was affirmed on appeal.  The Tenth Circuit recently reiterated that "'[f]ederal jurisdiction is not barred by the <u>Rooker-Feldman</u> doctrine if [the federal] suit "was filed before the end of the state courts'

---

[13]Motion to Stay at 7, ¶ 23.

[14]<u>Exxon Mobil</u>, 544 U.S. at 292-93.

appeal process.""''"[15] Because Renfrow's appeal of the UFTA Judgment to the Oklahoma Supreme Court remains pending, this Court's jurisdiction over whether the UFTA Judgment infringed on Renfrow's discharge is not barred by Rooker-Feldman.

Exxon Mobil is settled law that is precisely applicable to the circumstances of this case. Movants have no likelihood of succeeding on their Rooker-Feldman defense.

Likewise, applicable preclusion law is not unsettled. Oklahoma preclusion law applies to judgments, like the UFTA Judgment, entered by Oklahoma state courts.[16] The Oklahoma Supreme Court has set forth four elements that must be established before a litigant is precluded from litigating an issue in a subsequent proceeding. The first element is the existence of a "valid, final judgment."[17] A final judgment is one "in which a timely and properly perfected appeal has been acted on by the highest court whose review has been sought."[18] Renfrow's appeal of the UFTA Judgment has not yet been "acted on" by the Oklahoma Supreme Court, and therefore it is not a final judgment for the purposes of issue preclusion under Oklahoma law. Accordingly, Movants cannot establish even the first element required to succeed on appeal of this Court's rejection of their issue preclusion defense.

---

[15] Montero v. Tulsa Airport Improvements Trust, No. 18-5011 (10th Cir. May 20, 2019) at 3, *quoting* Chapman v. Oklahoma, 472 F.3d 749 (10th Cir. 2006) (*quoting* Guttman v. Khalsa, 446 F.3d 1027, 1029 (10th Cir. 2006)).

[16] See Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985).

[17] Salazar v. City of Oklahoma City, 1999 OK 20, 976 P.2d 1056, 1060 n.7.

[18] Nealis v. Baird, 1999 OK 98, 996 P.2d 438, 459.

Relatedly, Movants argue that this Court erred in finding that the UFTA Judgment violated the discharge injunction because the jury in the State Court Case was instructed not to award damages for prepetition transfers.[19] Because it is impossible for Movants to establish preclusion, however, Renfrow was not precluded from offering, and the Court was not precluded from admitting and considering, evidence relevant to the timing of the supposed fraudulent transfers to determine whether the UFTA claim had been discharged.

Movants also argue, without any authority, that the Court erred in applying federal bankruptcy law to determine whether Grogan's claims for alleged fraudulent transfers arose prepetition (discharged) or postpetition (not discharged).[20] The law is settled in the Tenth Circuit that for the purpose of determining whether a claim or debt arose prepetition, and thus is discharged, "a [prepetition] claim will exist if some pre-petition conduct has occurred that will give rise to liability."[21] Movants contend that the Oklahoma UFTA governs when a "transfer" is made, and in this case, the UFTA would deem the transfers Grogan sought to recover to have been made "immediately before the commencement" of their UFTA action,[22] *i.e.*, on August 1, 2017, the date they amended the petition to add the UFTA claim in the State Court Case.[23] The UFTA does not purport to establish when a "claim" arises for the

---

[19]Motion at 7, ¶ 24.

[20]Motion at 7-8, ¶ 24.

[21]In re Parker, 264 B.R. 685, 697 (B.A.P. 10th Cir. 2001), *aff'd*, 313 F.3d 1267 (10th Cir. 2002).

[22]24 O.S. § 118(1)(b) and (2).

[23]Under Movants' theory, any creditor possessing a UFTA claim against a debtor based upon a prepetition transfer could, after the claim was discharged, commence a post-

purpose of determining whether the claim is discharged in bankruptcy, however. The timing of the *conduct* giving rise to the claim governs whether a claim is discharged. The fictional transfer created by the UFTA does not supersede settled bankruptcy law. Movants have not shown that they are likely to prevail on their appeal of this issue.

Movants complain that the Court "refused to allow Defendants to have discovery on [Renfrow's] pre-existing mental health conditions."[24] In the Discharge Violation Litigation, Renfrow sought, as an element of compensatory damages, compensation for the anxiety, stress, and emotional anguish suffered as a result of Movants' post-discharge reanimation of the State Court Case. Defendants sought to compel Renfrow to sign a blanket release of her HIPAA privacy protections to allow Defendants to obtain all medical, prescription drug, and mental health records for three years preceding the Discharge Violation Litigation, as well as records created thereafter, arguing such information was relevant to causation. Defendants failed to justify their overbroad and intrusive discovery requests, however. Renfrow voluntarily waived her patient/therapist privilege and allowed Defendants access to the therapist she visited *after* Defendants amended the petition in the State Court Case and provided them with treatment records. The Court found that any perceived benefit to compelling Renfrow to waive HIPAA protections and produce three years of medical and mental health records was grossly outweighed by the potential harm to Renfrow's privacy

---

discharge UFTA action to recover the same transfer by asserting that under Oklahoma UFTA, the prepetition transfer is deemed to have occurred postpetition. It should go without saying that state law cannot revive discharged claims.

[24]Motion at 8, ¶ 25.

10

interests.[25] Courts have wide discretion in handling pretrial discovery disputes, and appellate courts review discovery rulings for abuse of discretion.[26] Movants have not made any showing that the Court abused its discretion in denying Defendants' motion to compel discovery.

The Movants complain that the undersigned committed error in failing to recuse from hearing this matter. The denial of a motion to recuse is reviewed for an abuse of discretion.[27] For the reasons stated in the Order Denying Defendants' Motion to Disqualify,[28] Movants are unlikely to show that the Court abused its discretion. Applying settled Tenth Circuit law, the Court concluded it was not required to recuse for bias or partiality if the judge's opinion is based solely on information obtained during the course of judicial proceedings. Movants failed to establish that any opinion the Court may have had of any of the litigants or counsel was derived from an extrajudicial source. In addition, the Movants' motion to recuse, having been filed a week before trial, was untimely.

Likewise, Movants have not demonstrated a likelihood that the Court abused its discretion in denying their motion to disqualify Ron Brown as counsel for Renfrow on the ground that he was also a witness.[29] Notwithstanding that Movants knew for months that

---

[25]See Transcript of Hearing on Defendants' Motion to Strike Plaintiff's Emotional Distress Claim or, Alternatively, Motion to Compel (Doc. 65) (bench ruling).

[26]Willner v. Univ. of Kansas, 848 F.2d 1023, 1029 (10th Cir. 1988).

[27]Id. at 1026.

[28]Doc. 74.

[29]See Motion at 8, ¶ 25.

Brown intended to testify, they waited until the week before trial to seek his disqualification.[30] Again, Movants' motion was not timely asserted, and granting the motion would have caused substantial prejudice to Renfrow.

Movants have not made "a strong showing" that they are likely to succeed on the merits of their appeal. Nor have they raised "questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation and thus for more deliberate inquiry."[31] Accordingly, the Judgment should not be stayed pending their meritless appeal.

  B. <u>Will Movants be irreparably harmed in absence of a stay?</u>

Movants contend that "denial of a stay of the Court's Judgment ordering Defendants to vacate the [UFTA Judgment] and dismiss the [State Court Case] pending appeal will effectively deny Defendants their appeal of this Court's Judgment; thus, Defendants will be irreparably harmed."[32] They argue that if they must vacate the UFTA Judgment, they will have "irrevocably lost that judgment and will not be able to revive it or enforce it, and the appeal will have been for naught because Defendants will not be able to get their judgment back."[33] They also complain they would suffer "significant financial loss for costs and fees

---

[30]See Order Denying Defendants' Motion to Disqualify Ron Brown (Doc. 81).

[31]Motion at 4, ¶ 10, *quoting* <u>McClendon v. City of Albuquerque</u>, 79 F.3d 1014, 1020 (10th Cir. 1996).

[32]Motion at 4, ¶ 11.

[33]Motion at 5, ¶ 13. The Court notes that AHN does not have a judgment against Renfrow. The UFTA Judgment was entered solely in favor of the Trust of which Grogan is trustee.

expended taking the Grogan Action to trial, obtaining the [UFTA Judgment], and then defending that judgment on appeal."[34] Thus, Movants argue that in absence of a stay pending appeal, their appeal of the Judgment will be moot.[35]

An appeal becomes moot only if the appellate court "cannot grant any effectual relief whatever in favor of the appellant. The available remedy, however, does not need to be fully satisfactory to avoid mootness. To the contrary, even the availability of a partial remedy is sufficient to prevent [a] case from being moot."[36] The Judgment includes both injunctive and monetary components. While they contend that the UFTA Judgment could not be reinstated, the Movants have not established that the appellate court could not fashion any effectual relief if they prevailed on appeal.[37]

    C.    <u>Will Renfrow be substantially injured by imposition of a stay pending appeal?</u>

By virtue of this Court's discharge order, Grogan's claims against Renfrow were discharged in June 2017. She has not had the benefit of that relief since August 1, 2017, the day Grogan revived the State Court Case. Renfrow has been forced to litigate against

---

[34]Motion at 5, ¶ 14. Movants also argue that not staying the Judgment will put AHN in the ethical dilemma of having to advise Grogan to vacate the UFTA Judgment notwithstanding AHN's belief in its validity. Motion at 6, ¶ 16. The Court notes that Grogan need not look to AHN for advice on whether she should comply with the Judgment because she is represented in the Discharge Violation Litigation, and in taking this appeal, by the Franden Farris firm. If that firm perceives a conflict in its representation of Grogan and AHN, it should advise them to seek separate counsel.

[35]Motion at 5, ¶ 15.

[36]<u>Calderon v. Moore</u>, 518 U.S. 149, 150 (1996) (quotation marks and citations omitted).

[37]Movants have not argued irreparable harm if the monetary judgment is not stayed.

Grogan and AHN on numerous fronts to defend her discharge. In the Discharge Violation Litigation, she established, by clear and convincing evidence, that transfers that Defendants argued were fraudulently made to Renfrow could only have occurred prepetition and thus claims for recovery of such transfers were discharged, and that Movants acted in reckless indifference to Renfrow's discharge in obtaining the UFTA Judgment. The UFTA Judgment continues to offend the discharge order and injunction, and moreover, its existence remains a stain on Renfrow's reputation, credit, and ability to obtain permanent employment. The evidence provided at trial established that every day the UFTA Judgment is outstanding is harmful to Renfrow – delaying its vacation and dismissal of the State Court Case pending the conclusion of the appeal in this case, which may be years, constitutes substantial harm.

Further, staying enforcement of the monetary judgment against AHN, who has insurance coverage, would be inequitable and harmful to Renfrow. Although Movants have offered a bond to secure payment of the Judgment if they lose their appeal, Renfrow must continue to invest time and money, and suffer the inherent stress and anxiety of continued litigation, over the course of the appeal. The appeal itself deprives Renfrow of the benefit of her discharge; two years after her discharge, she has not had a fresh start. Depriving her of the benefit of the Judgment, too, while Movants pursue an appeal that is unlikely to succeed, will only intensify the harm to Renfrow, and paradoxically, will place Movants back in the position they were before the Court found them to be in contempt of the discharge injunction. Movants have not established that the equities weigh in their favor.

D. <u>Where the public interest lies</u>.

As the United States Supreme Court held in one of its most cited bankruptcy cases,

> One of the primary purposes of the Bankruptcy Act is to "relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." [citation omitted]. This purpose of the act has been again and again emphasized by the courts as *being of public as well as private interest*, in that it gives to the honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy, a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt.[38]

Respect for the bankruptcy discharge is diminished if it is not vigorously protected and enforced by the courts. Suspending the protection of the discharge to allow a creditor to appeal a judgment that holds the creditor in contempt of the discharge order and statutory injunction is against public interest.

## IV. Conclusion

"A stay is not a matter of right, even if irreparable injury might otherwise result. Instead it is an exercise of judicial discretion and the propriety of its issue is dependent upon the circumstances of the particular case."[39] Under the circumstances of this case, after assessing the four factors and balancing the equities, the Court concludes that Movants have not made the substantial showing necessary to warrant a stay pending appeal. The Motion is therefore **denied**.

**SO ORDERED** this 22nd day of May, 2019.

DANA L. RASURE, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT

---

[38]<u>Local Loan Co. v. Hunt</u>, 292 U.S. 234, 244 (1934) (emphasis added).

[39]<u>Nken</u>, 556 U.S. at 433.