Filed/Docketed
May 07, 2021

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 17-10385-R |
| RENFROW, MIRANDA KRISTIN, ) | Chapter 7 |
| ) | |
| Debtor. ) | |

_____

| | |
|---|---|
| MIRANDA KRISTIN RENFROW, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Adv. No. 17-1027-R |
| ) | |
| COURTNEY GROGAN, ) | |
| SUCCESSOR TRUSTEE OF THE ) | |
| JOE C. COLE REVOCABLE ) | |
| TRUST, UNDER TRUST AGREE- ) | |
| MENT DATED MARCH 28, 2002, ) | |
| and ATKINSON, HASKINS, ) | |
| NELLIS, BRITTINGHAM, GLASS ) | |
| & FIASCO, P.C., ) | |
| ) | |
| Defendants. ) | |

## ORDER ON REMAND

Before the Court is the (1) Opinion and Order (Adv. Doc. 143) entered by the Honorable Terence C. Kern ("Remand Order") in Defendants' appeal to the United States District Court for the Northern District of Oklahoma ("District Court") (Case No. 19-CV-248-TCK-FHM) of the Judgment entered in this adversary proceeding; (2) Plaintiff's Brief on the Court's Reconsideration of its Memorandum Opinion Dated April 23, 2019 [Dkt 101] Based on Taggart v. Lorenzon [sic], 139 S.Ct. 1795 (2019) (Adv. Doc. 150) filed by Plaintiff Miranda Kristin Renfrow ("Renfrow"); and (3) Defendants' Memorandum and Brief Regarding Taggart v. Lorenzen in Accordance with the District Court's September

30, 2020 Remand Order (Adv. Doc. 152) ("Defendants' Remand Brief") filed by Defendants Courtney Grogan, Successor Trustee of the Joe C. Cole Revocable Trust, Under Trust Agreement Dated March 28, 2002 ("Grogan") and Atkinson, Haskins, Nellis, Brittingham, Glass & Fiasco, P.C. ("AHN") (collectively, the "Defendants").

## I.   Jurisdiction

The Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334, 157(a), and 157(b)(1) and (2), and Local Civil Rule 84.1(a) of the United States District Court for the Northern District of Oklahoma.

## II.   Posture of the case

In 2013, Renfrow and her professional corporation, Envision Medical & Surgical Eye Care, P.C. ("Envision") purchased an ophthalmology practice from Grogan. In 2016, Grogan sued Renfrow in state court alleging claims of breach of contract and unjust enrichment with respect to Loans made to Renfrow in connection with the purchase,[1] for which Renfrow and Envision were allegedly jointly liable. On March 10, 2017, Renfrow filed a petition for relief under Chapter 7 of the Bankruptcy Code. On June 15, 2017, this Court entered an order granting Renfrow a discharge of all dischargeable debts, which unambiguously included the Loans.

On August 1, 2017, AHN, on behalf of Grogan, filed an amended petition in the state court action ("Second Amended Petition") wherein Grogan essentially restated

---

[1] "Loans" is defined on page 4 of the Memorandum Opinion (Adv. Doc. 101).

verbatim the claims against Renfrow seeking repayment of the Loans. In the "amended" portion of the Second Amended Petition, Grogan alleged that Renfrow filed bankruptcy and then caused Envision to transfer "substantial assets" from Envision's bank accounts to herself with the intent to hinder, delay, and defraud Grogan in violation of the Oklahoma Uniform Fraudulent Transfers Act (the "UFTA Claim").[2]

Renfrow reengaged her bankruptcy counsel, Ron Brown, to enforce her discharge. On August 26, 2017, Renfrow filed a Complaint for Violation of the Permanent Discharge Injunction (Adv. Doc. 1) ("Complaint") in the bankruptcy court, seeking sanctions against Defendants for reasserting discharged claims against Renfrow. Renfrow also contended that Grogan's UFTA Claim was simply a "ruse to continue litigation against [Renfrow]" to collect the Loans she discharged in June.[3]

Grogan eventually dismissed the prepetition breach of contract and unjust enrichment claims against Renfrow. In December 2017, the state court held a jury trial on the UFTA Claim and the jury found in favor of Grogan in the amount of $89,500 (the "UFTA Judgment"). Renfrow appealed the UFTA Judgment to the Oklahoma Supreme Court, and that appeal is pending.

On January 31, 2018, Renfrow amended her Complaint to allege that during the closing moments of the state court jury trial, Defendants violated the discharge injunction

---

[2]  Memorandum Opinion at 12.
[3]  Complaint at 4, ¶ 19.

when Grogan's counsel, AHN attorney Clark Phipps, directed the jury to award Grogan damages for various actions Renfrow took when she closed her ophthalmology practice prior to filing bankruptcy. Phipps referred to those actions as "transfers" of Envision's property, and represented to the jury that they could find Renfrow liable for those transfers under the UFTA, notwithstanding his knowledge that those claims arose prior to Renfrow's bankruptcy ("Amended Complaint") (Adv. Doc. 28).

Renfrow's Amended Complaint was tried to this Court in November 2018. On April 23, 2019, this Court found Defendants in contempt of the discharge injunction and entered judgment in favor of Renfrow and against Grogan and AHN, jointly and severally, in the amounts of $104,867 in compensatory damages and $100,000 in punitive damages ("Judgment") (Adv. Doc. 102). In addition, the UFTA Judgment was declared void under 11 U.S.C. § 524(a)(1).[4] Findings of fact and conclusions of law supporting the Judgment are set forth in the Memorandum Opinion entered simultaneously with the Judgment (Adv. Doc. 101). Defendants appealed the Judgment to the District Court.

On June 3, 2019, the United States Supreme Court decided the case of Taggart v. Lorenzen,[5] wherein it established a new standard for holding a creditor in civil contempt for violating a discharge order. On September 30, 2020, the District Court entered an order remanding this case for further consideration in light of the change in law. The sole issue

---

[4]  Unless otherwise indicated, all references to "Section" and "§" herein relate to sections of the Bankruptcy Code, Title 11 of the United States Code.

[5]  139 S.Ct. 1795 (2019).

on remand is whether Defendants may be held in civil contempt of the discharge order and injunction under the new standard articulated by the Supreme Court in Taggart.

This Order on Remand supplements the Memorandum Opinion. All Findings of Fact and Conclusions of Law set forth in the Memorandum Opinion are incorporated herein as if stated in full.

### III. Standard applicable to holding a party in civil contempt for violating the discharge injunction.

#### A. Taggart requires the Court to assess whether a creditor's conduct is contemptuous under an objective standard.

In Taggart, the Supreme Court was asked to determine whether the Ninth Circuit Court of Appeals applied the correct standard in evaluating whether a creditor's violation of the discharge injunction was contemptuous and thus sanctionable. The Ninth Circuit had held that a creditor could not be sanctioned for contempt if the creditor had a good faith belief that the discharge did not apply to its claim, even if the creditor's good faith belief was unreasonable.[6] The Supreme Court rejected the subjective standard applied by the Ninth Circuit. Citing its McComb v. Jacksonville Paper Co. decision,[7] the Supreme Court stated: "We have explained before that a party's subjective belief that she was

---

[6]   Id. at 1802-03.

[7]   336 U.S. 187 (1949).

complying with an order ordinarily will not insulate her from civil contempt if that belief was objectively unreasonable."[8]

Instead, the Supreme Court adopted the objective standard that traditionally governs the enforcement of other federal injunctions.  Accordingly, the Supreme Court held that in cases of discharge violations, a bankruptcy court may "impose civil contempt sanctions when there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order."[9]  In other words, "a court may hold a creditor in civil contempt for violating a discharge order if there is *no fair ground of doubt* as to whether the order barred the creditor's conduct."[10]  "Under the fair ground of doubt standard, civil contempt . . . may be appropriate when the creditor violates a discharge order based on an objectively unreasonable understanding of the discharge order or the statutes that govern its scope."[11]

Prior to Taggart, bankruptcy courts in this Circuit held parties in contempt of a discharge order where (1) the party knew of the discharge and (2) intended the actions that constituted a violation of the discharge.[12]  The debtor in Taggart advocated for the adoption of this standard. The Supreme Court concluded, however, that this test was overbroad in

---

[8]   Taggart, 139 S.Ct. at 1802.

[9]   Id. at 1801.

[10]  Id. at 1799 (emphasis original).

[11]  Id. at 1802.

[12]  See, e.g., Peyrano v. Sotelo (In re Peyrano), 558 B.R. 451, 457 (Bankr. E.D. Okla. 2016).

that it could impose strict liability on creditors for actions for which there was a "reasonable basis for concluding that the creditor's conduct did not violate the order."[13] Although both elements of that overbroad test are still necessary to establish a *violation* of the discharge order,[14] under Taggart, courts must now also determine whether the creditor's purported belief that its conduct was permitted under the discharge order and § 524(a) was objectively reasonable or objectively unreasonable. The objective standard considers what a hypothetical reasonable person, *i.e.,* one who "exercises the degree of attention, knowledge, intelligence, and judgment that society requires of its members for the protection of their own and of others' interests,"[15] would believe or understand regarding the scope of the discharge under the circumstances. [16]

      B.      Under Taggart, a party's subjective intent is still relevant in determining bad faith and in imposing consequences.

Although the Supreme Court set an objective standard for evaluating whether a creditor acted in contempt, a creditor's subjective intent is not irrelevant—contempt "may

---

[13]    Taggart, 139 S.Ct. at 1803.

[14]    See In re Mellem, 625 B.R. 172, 178 (B.A.P. 9th Cir. 2021).

[15]    *Reasonable Person*, BLACK'S LAW DICTIONARY (11th ed. 2019), *citing* RESTATEMENT (SECOND) OF TORTS § 283(b).

[16]    *Standard: Objective Standard*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("A legal standard that is based on conduct and perceptions external to a particular person. In tort law, for example, the reasonable-person standard is considered an objective standard because it does not require a determination of what the defendant was thinking.")

be warranted when a party acts in bad faith."[17] "[I]n McComb, we explained that a party's 'record of continuing and persistent violations,' and 'persistent contumacy' justified placing 'the burden of any uncertainty in the decree . . . on [the] shoulders' of the party who violated the court order."[18] In other words, a party acting in bad faith cannot quibble over semantics to avoid sanctions for disobeying an injunction. A party acting in bad faith is not entitled to the benefit of any "fair ground of doubt" that a "reasonable person" acting in good faith might be accorded under the objective standard.

  C. <u>Facially permissible conduct violates the discharge injunction if its effect is to improperly harass or coerce a debtor to pay discharged debt.</u>

In <u>Paul v. Iglehart (In re Paul)</u>,[19] the Tenth Circuit Court of Appeals established boundary lines over which a creditor may not cross when engaging in so-called "facially permissible" post-discharge litigation against a debtor. In doing so, the Circuit balanced a creditor's right to pursue litigation against a discharged debtor for purposes *other than* to impose liability on debtor for discharged debt, and the debtor's right to be free of harassment and coercion from creditors angling for payment of discharged debts.

---

[17] <u>Taggart</u>, 139 S.Ct. at 1802, *citing* <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 50 (1991). The Supreme Court also reaffirmed that while subjective good faith is not a defense to a charge of civil contempt, it may be relevant in framing an appropriate sanction. <u>Id</u>.

[18] <u>Id</u>., *quoting* <u>McComb</u>, 336 U.S. at 192-93.

[19] 534 F.3d 1303 (10th Cir. 2008).

In Paul, the bankruptcy court below had imposed sanctions against a creditor that sought post-discharge discovery from debtors in a state court action commenced prepetition and amended post-discharge. The creditor's amended petition retained debtors as nominal defendants, but sought judgment solely against a related non-debtor entity. In order to establish the claim against the related entity and damages, the creditor needed books, records, and other background and historical information in the possession of the debtors. The bankruptcy court found that the creditor's discovery was "oppressively tardy and unjustified" and the cost and effort required to respond impeded the debtors' fresh start.[20] The Tenth Circuit reversed the sanctions because joining debtors as nominal parties and seeking discovery for the purpose of establishing liability and damages against a non-debtor entity is not prohibited by the discharge injunction.[21]

The bankruptcy court had also imposed sanctions against the creditor for asserting new claims against one of the debtors based upon alleged post-petition wrongdoing. The bankruptcy court enjoined the creditor from proceeding on the claim, and sanctioned the creditor, because it saw "little or no evidence to support" the creditor's allegations of postpetition wrongdoing.[22] The Tenth Circuit reversed that sanction because claims arising

---

[20] Id. at 1310.

[21] Id. at 1309. "Although § 524(a)(2) prohibits actions brought to collect a discharged debt from the debtor, it permits suits—even those brought to collect on debts a debtor has discharged—that formally name the debtor as a defendant but are brought to collect from a third party." Id. at 1307.

[22] Id. at 1311 n.9.

9

from postpetition conduct are not within the scope of the discharge. The Tenth Circuit stated, however, that sanctions for a discharge violation could be imposed "*if* it were determined, on a factually sufficient record, that the effect of the state litigation was nevertheless to harass and coerce [the debtors] into paying discharged debts."[23]

Paul stands for the fundamental and obvious principles that (1) sanctions for discharge violations are appropriate only when the party takes some action prohibited by §524 and (2) a party may name a discharged debtor as a defendant, and require the debtor to respond to discovery, in a suit to collect discharged debt from a non-debtor third party. But the Tenth Circuit was careful to carve out "an overarching exception" to principles 1 and 2 above, *i.e.*, that "[n]otwithstanding the facial permissibility of a lawsuit or some other action taken by a creditor vis a vis a discharged debtor, a violation of § 524(a)(2) may still be found if the debtor proves the creditor acted in such a way as to 'coerce' or 'harass' the debtor improperly, *i.e.*, so as to obtain payment of the discharged debt."[24] "The inquiry is objective; the question is whether the creditor's conduct had the practical, concrete effect of coercing payment of a discharged debt, and bad faith is not required."[25] The debtor must "prove not merely that [the creditor's] act is not what it appears to be, but that the act in

---

[23] Id. at 1309 (emphasis original). See also id. at 1313 ("[C]onduct that facially appears permissible may still violate § 524(a)(2) if its objective effect is prohibited, *i.e.*, if it really serves to pressure the debtor to pay a discharged debt. The bankruptcy court made no such finding here; indeed, the record would not have supported such a finding.")

[24] Id. at 1308 (quotations and citations omitted).

[25] Id. (citations omitted).

10

question is one to collect a discharged debt *in personam*."[26] The vitality of the Paul decision was not disturbed by Taggart.

IV. **Supplemental findings of fact and conclusions of law in light of Taggart**

  A. The Second Amended Petition demanded judgment against Renfrow for the discharged Loans.

In the Second Amended Petition, filed in the state court less than two months after Renfrow's discharge, Defendants re-pleaded the breach of contract/unjust enrichment claims seeking repayment of the Loans. In the Memorandum Opinion, the Court stated that "[n]o reasonable person or lawyer could conclude, from reading the Second Amended Petition, that the breach of contract and unjust enrichment claims were asserted solely against Envision; the prayer for relief requested a judgment against both Envision and Renfrow."[27] Thus, from an objective viewpoint, the Second Amended Petition, on its face, reflected a continuation of a prepetition action seeking to impose personal liability on Renfrow for discharged debt.[28]

Defendants' revival of the prepetition litigation was not an insignificant or harmless bit of sloppiness. Renfrow, who had moved out of state, had to rehire her bankruptcy counsel to enforce her discharge in this district. Through numerous avenues, Defendants were served with notice of the discharge violation, and of the distress and expense to

---

[26] Id. (citations omitted).

[27] Memorandum Opinion at 49.

[28] See Memorandum Opinion at 9-14.

11

Renfrow caused thereby, but Renfrow's requests for immediate dismissal of the discharged claims were met first with nonchalance, and later, with defiance.[29]

There is no fair ground of doubt that the Second Amended Petition, on its face, sought to impose *in personam* liability on Renfrow for discharged claims. Filing the Second Amended Petition and refusing to dismiss the obviously discharged claims constituted contemptuous violations of the discharge order.

> B. <u>To the extent that Defendants believed that their conduct in prosecuting the UFTA Claim against Renfrow did not violate the discharge injunction, their belief was unreasonable.</u>

The Court finds and concludes that there is "no fair ground of doubt" that the discharge injunction barred Defendants from obtaining a personal judgment against Renfrow for alleged fraudulent transfers of Envision's equipment, furniture, patient files, charts, and goodwill, alleged acts that unequivocally occurred prepetition. Defendants *knew* that (1) Renfrow had stopped seeing patients and the patients had been entrusted to another practice, (2) Envision's leased equipment had been repossessed, and (3) Envision had vacated its office space, and ceased doing business, all at least a month before Renfrow filed bankruptcy.[30] Those facts were established in Renfrow's bankruptcy case and in discovery, and Defendants *never* offered any evidence to the contrary. Case law is clear

---

[29] See Memorandum Opinion at 14-18 (notice of the violation and requests for dismissal were conveyed to Defendants through Renfrow's answer to the Second Amended Petition, the Complaint she filed in this Court, cease and desist letters and emails, and phone calls between Brown and Phipps).

[30] See, e.g., id. at 22-26.

that "if some pre-petition conduct has occurred that will give rise to liability," liability on that claim is a prepetition claim that falls within the scope of the discharge.[31]

Defendants cannot claim ignorance or ambiguity of the law or the facts. They clearly understood that seeking or obtaining a judgment against Renfrow for actions taken prepetition would violate the discharge injunction. Renfrow's counsel, Brown, warned Phipps before and during the state court trial against venturing into prepetition territory in pursuing the UFTA Claim. The state court entered an order granting Renfrow's motion in limine which "limit[ed] any reference or argument for any activity to support [Grogan's] claim alleging fraudulent transfers on or before March 10, 2017," correctly concluding that "[t]he Bankruptcy Court has exclusive jurisdiction to consider matters related to [Renfrow's] alleged fraudulent conduct before debtor filed bankruptcy."[32] Phipps repeatedly acknowledged Renfrow's concerns, assuring Brown and Renfrow that Defendants only sought recovery of transfers that occurred after March 10, 2017.

Despite paying lip service to the scope of Renfrow's discharge, however, in his closing argument to the jury, Phipps represented, without any subjective or objectively reasonable belief, that Renfrow caused Envision to transfer to herself Envision's office furnishings, obsolete equipment, and old furniture *after* she filed bankruptcy, and requested

---

[31] In re Parker, 264 B.R. 685, 697 (B.A.P. 10th Cir. 2001), *aff'd*, 313 F.3d 1267 (10th Cir. 2002).

[32] Memorandum Opinion at 26. See also id. at 32 n.103.

the jury to award Grogan $30,000 in damages for that transfer.[33] Also, despite having no subjective or objectively reasonable basis to believe that Renfrow's delivery of patient charts to another physician occurred postpetition, or that Envision even possessed *any* goodwill, Phipps invited the jury to award Grogan $50,000 for "the goodwill, the charts . . . She took 80 or – 70 or 80 Bankers boxes and gave them to another physician. . . . I'm asking you to give $50,000 to this ongoing medical practice, goodwill value, which she transferred away from her creditors."[34] Any belief Defendants may have had that it was lawful under the discharge injunction to deceive the state court and jury regarding the timing of the disposal of patient charts was patently unreasonable.[35]

With respect to the only UFTA Claim that was pled, Renfrow and Brown justifiably believed that Renfrow's personal liability was limited to the amount she withdrew from Envision's bank accounts, *i.e.*, $3,100. Phipps told the jury to disregard as irrelevant the amount Renfrow admittedly withdrew from Envision's bank accounts, however. Instead, without any factual or legal basis, Phipps represented to the jury that Renfrow "took control" of $76,000 of uncollected receivables, wresting them away *from* Envision.[36] Phipps knew, however, that Renfrow was the sole officer and employee of Envision, and all evidence supported that she had continued to act *on behalf of Envision* to recover its last

---

[33] Id. at 30-43.

[34] Id. at 27. See also id. at 29 n. 93, 30-34.

[35] See id. at 32 n. 103.

[36] Id. at 26.

14

collectible accounts, and that she deposited the receipts into Envision's bank account. Phipps's representation that Renfrow personally misappropriated Envision's uncollected receivables worth $76,000 was not even within reasonable bounds of debate. He invented a transfer out of thin air to inflate the amount of damages the jury could award. At the hearing on contempt, Phipps's attempt to justify his theory that Renfrow "took" the receivables made no sense whatsoever.[37]

The totality of the circumstances evidences that Defendants' assertion of the UFTA Claim was a pretense intended to harass Renfrow and had the practical and concrete effect of awarding Grogan a monetary judgment against Renfrow for claims that had been discharged. The Court finds no objectively reasonable basis to conclude that Defendants' conduct might have been lawful under the discharge.

## V. Defendants' interpretations of <u>Taggart</u> and <u>Paul</u> are flawed.

### A. <u>Taggart does not deprive bankruptcy courts of jurisdiction over dischargeability decisions or contempt proceedings.</u>

Defendants contend that the Supreme Court in <u>Taggart</u> "affirmed deference to state court procedure to determine discharge questions" and that "under <u>Taggart</u> the bankruptcy court had no jurisdiction to question the state court procedure."[38] No jurisdictional issue was presented to or decided by the Supreme Court in <u>Taggart</u>, however. The only issue

---

[37] See <u>id</u>. at 34-37.

[38] Defendants' Remand Brief at 15.

before the Supreme Court concerned the standard to be applied when evaluating whether a discharge violator's conduct justified imposing sanctions for contempt.

The Supreme Court briefly addressed concurrent state and federal jurisdiction when it considered and rejected the debtor's argument for adopting the strict liability standard. In that context, the debtor suggested that if litigants were confused about the scope of a debtor's discharge, they could seek a ruling from the bankruptcy court before taking an action that might be barred by the discharge. The Supreme Court found such a procedure burdensome and expensive, and commented that it "would alter who decides whether a debt has been discharged, moving litigation out of state courts, which have concurrent jurisdiction over such questions, and into federal courts."[39]

To be sure, non-bankruptcy courts do have concurrent jurisdiction to determine whether certain categories of claims have been discharged.[40] But only bankruptcy courts have jurisdiction to determine whether fraud, larceny, embezzlement, or malicious injury claims are excepted from the discharge.[41] If a creditor asserting such a claim fails to present

---

[39] Taggart, 139 S.Ct. at 1803.

[40] In re McKendry, 40 F.3d 331, 335 n.3 (10th Cir. 1994).

[41] See 11 U.S.C. § 523(c); §§ 523(a)(2), (a)(4), and (a)(6); Bankruptcy Rule 4007. In McKendry, the Tenth Circuit recognized that the cause of action to determine dischargeability of a fraud claim "arises solely by virtue of the Bankruptcy Code and its discharge provisions" and is under the exclusive jurisdiction of the bankruptcy court. In other words, state courts lack jurisdiction to determine whether a fraud claim is excepted from the discharge. 40 F.3d at 336.

16

it to the bankruptcy court for adjudication in a timely manner, the claim is forever discharged. State courts have no role in such dischargeability decisions.

Further, while it is true that state courts have jurisdiction to "enforce a discharge injunction raised as an affirmative defense,"[42] as argued by Defendants, enforcing the discharge means granting the discharged debtor relief from suits for claims or debts that are within the scope of the discharge. A state court lacks the power to modify the discharge injunction, however. If a state court *wrongly* finds that a claim was not discharged, that court has in effect modified a federal injunction to reinstate a previously discharged claim or debt.[43] Nothing in Taggart compels bankruptcy courts to "defer" to a state court's reinstatement of a debt that was discharged by the bankruptcy court's discharge order. Bankruptcy courts have the power and jurisdiction to interpret their own orders, and are the only courts that can enforce a debtor's discharge through contempt proceedings and grant compensatory and coercive relief to a debtor that has been wronged by violations of the discharge injunction that occur in or as a result of a state court proceeding.[44]

---

[42] Defendants' Remand Brief at 15.

[43] See Hamilton v. Herr (In re Hamilton), 540 F.3d 367, 373-75 (6th Cir. 2008), and cases cited therein.

[44] See, e.g., Belton v. GE Capital Retail Bank (In re Belton), 961 F.3d 612, 616-17 (2d Cir. 2020) and cases cited therein; Anderson v. Credit One Bank, N.A. (In re Anderson), 884 F.3d 382, 389-91 (2d Cir. 2018).

B.     Defendants' reliance on Paul is misplaced.

Defendants argue that the Paul case, discussed earlier,[45] supports their argument that this Court has no business enforcing its discharge order when a discharge violation occurs in the course of a state court proceeding. Because Paul is distinguishable on its facts, the legal principles stated in Paul are not helpful to Defendants' cause.

In Paul, the bankruptcy court enjoined a plaintiff from proceeding in her state court lawsuit against debtors and imposed monetary sanctions based on the bankruptcy court's belief that the plaintiff's pursuit of discovery from the debtors was oppressive and expensive, and that her claim against one of the debtors for post-discharge conduct appeared to lack evidentiary support. The Tenth Circuit held that none of the conduct committed by the plaintiff *so far* in the lawsuit (which was still in the discovery stage) constituted a discharge violation. Naming debtors as defendants, but not seeking judgment against them on prepetition claims, was permissible under the discharge injunction. Suing a debtor for postpetition conduct was permissible under the discharge injunction. Seeking discovery from a debtor that is a nominal defendant is permissible under the discharge injunction, even if responding to such discovery will be expensive and burdensome.

However, "conduct that facially appears permissible may still violate § 524(a)(2) if its objective effect is prohibited, *i.e.*, if it really serves to pressure the debtor to pay a

---

[45]    See Section III(C) herein.

18

discharged debt. In Paul, the abbreviated record in the enjoined state court proceeding did not establish that effect.

Unlike the bankruptcy court in Paul, this Court did not enjoin Defendants from prosecuting a facially permissible claim in state court. The UFTA Claim seeking recovery of postpetition transfers of assets from Envision's bank accounts was not barred by the discharge injunction. Renfrow and Brown accepted that Renfrow's withdrawals might support a colorable UFTA claim for recovery of $3,100 and that was the claim they defended. Defendants were entitled to and did proceed to trial on that claim. The record in Grogan's state court action and in this adversary proceeding establishes, however, that Defendants overstepped the boundaries of permissible postpetition litigation established in Paul. They used a facially permissible UFTA Claim as a device to obtain payment for the ophthalmology practice Grogan sold to Renfrow. Phipps led the jury and the state court to believe that it was permissible under the discharge to award Grogan up to $120,000 in damages based on transfers that were not at issue, did not happen, or occurred prior to Renfrow's bankruptcy. Phipps's dishonest argument was calculated to, and did in fact, reimpose liability on Renfrow for the Loans she discharged.

Defendants' belief that their litigation tactics were permissible under the principles set forth in Paul is unreasonable.

## VI.    Conclusion

Defendants did not reasonably attempt to comply with the discharge injunction. Instead, they deliberately manipulated the jury and the state court to circumvent it. There

is no fair ground of doubt that the discharge injunction bars this type of conduct. Defendants acted in bad faith, with malice, and in blatant disregard of bankruptcy law and this Court's injunction,[46] which under Paul and Taggart is contemptuous and sanctionable. The Judgment entered on April 23, 2019, is a reasonable, necessary, and appropriate sanction for Defendants' willful violation of the discharge injunction.[47]

**SO ORDERED** this 7th day of May, 2021.

DANA L. RASURE, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT

---

[46] See id. at 53 ("the continued litigation was motivated by ill will and spite"); at 52-54 ("Phipps improper conduct had the 'practical, concrete effect' of making Renfrow liable on the Loans she discharged"); at 77 ("Defendants acted egregiously, vindictively, deceptively, and in knowing or reckless disregard for Renfrow's discharge").

[47] "The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief. Section 105(a) authorizes the Court to award monetary and other forms of relief ... to the extent such awards are necessary or appropriate to carry out the provisions of the Bankruptcy Code." See In re Musto, 2021 WL 99343 at *3 (Bankr. M.D. Fla. Jan. 6, 2021) (internal quotation marks and citations omitted).