UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OKLAHOMA

Filed/Docketed
Aug 20, 2021

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| RENFROW, MIRANDA KRISTIN, | ) | Case No. 17-10385-R |
| | ) | Chapter 7 |
| Debtor. | ) | |

| | | |
|---|---|---|
| MIRANDA KRISTIN RENFROW | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 17-1027-R |
| | ) | |
| COURTNEY GROGAN, | ) | |
| SUCCESSOR TRUSTEE OF THE | ) | |
| JOE C. COLE REVOCABLE | ) | |
| TRUST, UNDER TRUST AGREE- | ) | |
| MENT DATED MARCH 28, 2002, | ) | |
| and ATKINSON, HASKINS, | ) | |
| NELLIS, BRITTINGHAM, GLASS | ) | |
| & FIASCO, P.C., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER DENYING MOTION TO STAY

Before the Court is the Defendants' Renewed Combined Motion to Stay Enforcement of Judgment Pending Appeal & To Fix the Amount of Supersedeas Bond (Doc. 157) filed by Defendants Courtney Grogan, Successor Trustee of the Joe C. Cole Revocable Trust, Under Trust Agreement Dated March 28, 2002 ("Grogan") and Atkinson, Haskins, Nellis, Brittingham, Glass & Fiasco, P.C. ("AHN") (collectively "Movants" or "Defendants"), and Renfrow's Objection to Defendants' Renewed Motion for Stay (Doc. 164) filed by Plaintiff Miranda Kristin Renfrow ("Renfrow").

**I.     Jurisdiction**

The Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334, 157(a), and 157(b)(1) and (2), and Local Civil Rule 84.1(a) of the United States District Court for the Northern District of Oklahoma.

**II.    Background**

Plaintiff Renfrow filed a petition for relief under Chapter 7 of the Bankruptcy Code on March 10, 2017. On June 15, 2017, this Court entered an order discharging all prepetition debts and claims against Renfrow. Accordingly, claims asserted by Grogan against Renfrow in the case of <u>Courtney Grogan, Successor Trustee of The Joe C. Cole Revocable Trust, under Trust Agreement dated March 28, 2002 v. Miranda K. Renfrow, D.O., an Individual, and Envision Medical and Surgical Eye Care, P.C., an Oklahoma Professional Corporation</u>, Case No. CJ-2016-2033 (the "State Court Case"), were discharged. On August 1, 2017, Grogan, through her counsel AHN, filed an amended petition in the State Court Case, reasserting the discharged prepetition claims and adding a new claim against Renfrow under the Uniform Fraudulent Transfer Act ("UFTA").

On August 26, 2017, Renfrow, through her counsel Ron Brown, commenced this adversary proceeding by filing a Complaint against Grogan and AHN alleging that they violated Renfrow's discharge by filing the amended petition in the State Court Case ("Discharge Violation Litigation"). Grogan and AHN continued prosecuting the UFTA claim against Renfrow. The State Court Case proceeded to jury trial in December 2017, which resulted in a judgment against Renfrow in the amount of $89,500 ("UFTA Judgment"). In January 2018, Renfrow amended her Complaint in the Discharge

Violation Litigation to assert that Grogan and AHN obtained the UFTA Judgment in violation of the discharge injunction. After the State Court denied Renfrow's motion for judgment notwithstanding the verdict, Renfrow timely appealed the UFTA Judgment and the JNOV denial to the Oklahoma Supreme Court. That appeal is pending.[1]

In the Discharge Violation Litigation, Grogan and AHN sought summary judgment in their favor, arguing that (1) this Court lacked jurisdiction under the Rooker-Feldman doctrine, (2) Renfrow was barred from relitigating whether the debt reduced to judgment was discharged, and (3) Grogan was not liable for any discharge violation because she acted upon advice of counsel. After careful consideration of all authorities cited by Defendants and after considerable research, the Court issued a detailed opinion denying summary judgment.[2]

First, the Court confirmed that its jurisdiction was intact. In 2005, the United States Supreme Court *reversed* a federal court that concluded that the Rooker-Feldman doctrine divested it of properly assumed jurisdiction when a state court, having heard the same issue, entered its judgment. In Exxon Mobil Corporation v. Saudi Basic Industries Corporation, the high court clarified that "[w]hen there is parallel state and federal litigation, Rooker-Feldman is not triggered simply by the entry of judgment in the state court. This Court has repeatedly held that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction. . . . Disposition of the

---

[1] On May 14, 2019, Grogan and AHN obtained a stay of the briefing deadlines in the UFTA Judgment appeal pending the conclusion of their appeal of the Judgment entered in this proceeding.

[2] Order Denying Defendants' Motion for Summary Judgment (Doc. 66).

federal action, once the state-court adjudication is complete, would be governed by preclusion law."[3]

Second, this Court determined that Defendants could not establish their issue preclusion defense. Among other things, Renfrow's appeal of the UFTA Judgment was pending, and therefore it was not a "final judgment" for the purposes of issue preclusion.

Third, the Court explained that "advice of counsel" has been uniformly rejected as a defense to a civil contempt charge for discharge violations.

The day after the Court denied summary judgment, and one week before the trial in the Discharge Violation Litigation, Defendants sought recusal of the undersigned and moved to disqualify Brown as Renfrow's counsel, which motions were denied. On November 29 and 30, 2018, the Discharge Violation Litigation was tried on the merits. In their closing arguments and trial brief, Defendants reasserted their Rooker-Feldman and issue preclusion defenses. Defendants also claimed that Renfrow lost the right to claim a discharge violation because she asserted her discharge as a defense in the State Court Case. Finally, Defendants argued that Renfrow failed to establish that Grogan and AHN intended to violate the discharge.

On April 23, 2019, this Court issued a Memorandum Opinion, reciting detailed findings of fact that support the conclusion that Defendants acted in intentional or reckless disregard of Renfrow's discharge in proceeding with the State Court Case and in obtaining the UFTA Judgment.[4] In the opinion, the Court addressed each of Defendants' defenses

---

[3] 544 U.S. 280, 292-93 (2005) (quotation marks and citations omitted).
[4] Memorandum Opinion (Doc. 101).

and legal arguments, and distinguished their authorities. A Judgment was entered confirming that the UFTA Judgment was void under 11 U.S.C. § 524(a)(1). In order to provide complete relief to Renfrow, Defendants were directed "to obtain an order vacating the [UFTA] Judgment against Renfrow as void, to dismiss the [State Court Case] against Renfrow, and to take any other action reasonably requested by Renfrow to evidence the fact that the [UFTA] Judgment against her is and was void *ab initio*."[5] In addition, a money judgment was entered "in favor of Renfrow and against Defendants, jointly and severally, for compensatory damages in the amount of $104,867 and punitive damages in the amount of $100,000."[6]

On May 7, 2019, Defendants appealed the Judgment to the United States District Court for the Northern District of Oklahoma,[7] and filed a motion in this Court seeking a stay of the Judgment pending appeal ("First Stay Motion").[8] On May 22, 2019, this Court entered an order denying the First Stay Motion.[9] On May 28, 2019, Defendants filed the same motion in the District Court hearing the appeal ("Second Stay Motion"),[10] which after extensive briefing and a hearing, was also denied by Magistrate Judge Frank McCarthy.[11]

---

[5] Judgment (Doc. 102).
[6] Id.
[7] Doc. 106.
[8] Doc. 108.
[9] Doc. 126.
[10] Grogan, et al. v. Renfrow, D.Ct. Case No. 19-CV-248-TCK-FHM, Doc. 9.
[11] Id., Doc. 23.

On June 3, 2019, the United States Supreme Court decided the case of Taggart v. Lorenzen,[12] wherein it established a new standard for holding a creditor in civil contempt for violating a discharge order. On September 30, 2020, District Court Judge Terence Kern entered an order remanding the case to this Court for further consideration in light of the change in law. The sole issue on remand was whether Defendants could be held in civil contempt of the discharge order and injunction under the new standard articulated by the Supreme Court in Taggart.

After careful consideration of the briefs submitted by the parties regarding the application of the Taggart standard, this Court entered its Order on Remand.[13] The Court reaffirmed its prior findings that in pursuing the UFTA Judgment, Defendants acted knowingly, intentionally, and in reckless disregard for Renfrow's rights. The Court found that under totality of the circumstances, Defendants' assertion of the UFTA claim was a pretense intended to harass Renfrow and had the practical and concrete effect of awarding Grogan a monetary judgment against Renfrow for claims that had been discharged. The Court found no objectively reasonable basis to conclude that Defendants' conduct might have been lawful under the discharge, and therefore Taggart's standard for civil contempt was satisfied. The Order on Remand supplemented the Memorandum Opinion entered by this Court on April 23, 2019, and the findings of fact and conclusions of law stated in the Memorandum Opinion were incorporated into the Order of Remand by reference.

---

[12] 139 S.Ct. 1795 (2019).

[13] Doc. 155.

On May 21, 2021, Defendants filed their Notice of Appeal of the Judgment, the Memorandum Opinion, and the Order on Remand.[14] On the same day, Defendants/Movants filed the current motion seeking a stay of enforcement and the approval of a supersedeas bond in the amount of $300,000 ("Third Stay Motion").[15] Once again, Movants seek to stay enforcement of the money judgment, and to stay the order that requires them to vacate the UFTA Judgment and dismiss the State Court Case. Movants present the same arguments and authorities that this Court previously rejected in ruling on the First Stay Motion and that Magistrate Judge McCarthy rejected in ruling on the Second Stay Motion. In addition, Movants contend that this Court misapplied Taggart in its Order on Remand.

### III. Discussion

Under Bankruptcy Rule 8007, granting a stay pending appeal is discretionary,[16] and "[t]he propriety of its issue is dependent upon the circumstances of the particular case."[17] In determining whether a stay pending appeal is appropriate, courts consider the traditional four-part standard applicable to preliminary injunctions, namely "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public

---

[14] Doc. 156.

[15] Doc. 157.

[16] Otero Rivera v. Lake Berkley Resort Master Assn, Inc. (In re Otero Rivera), 532 B.R. 425, 426 (Bankr. D. P.R. 2015).

[17] Nken v. Holder, 556 U.S. 418, 433 (2009) (quotation marks and citation omitted).

interest lies."[18] The burden is on the Movants to establish each of these factors in their favor. A "stay pending appeal is an extraordinary remedy and requires a substantial showing on the part of the movant."[19]

    A.    <u>Likelihood of success on appeal</u>

Movants have not made a strong showing that they are likely to succeed on appeal. Movants contend that the "Judgment involves numerous unsettled questions of law, including without limitation whether the Court has jurisdiction over this matter under the <u>Rooker-Feldman</u> doctrine and principles of comity and federalism."[20] In the <u>Exxon Mobil</u> case cited above, the United States Supreme Court noted the frequent misapplication of the <u>Rooker-Feldman</u> doctrine by lower courts, and clearly and succinctly explained that when a federal court exercises concurrent jurisdiction with a state court on a particular matter, the entry of the state court judgment *does not* divest the federal court of its jurisdiction.[21] Renfrow commenced the Discharge Violation Litigation prior to the entry of the UFTA Judgment, so under settled Supreme Court authority that is directly on point, the <u>Rooker-Feldman</u> doctrine is simply inapplicable.

The unpublished Tenth Circuit case that Defendants have relied upon in support of their <u>Rooker-Feldman</u> argument, <u>Flanders v. Lawrence</u>,[22] is distinguishable on its facts because unlike Renfrow, the debtor in that case did not complain of a discharge violation

---

[18]<u>Id</u>. at 434.

[19]<u>Otero Rivera</u>, 532 B.R. at 427.

[20]Third Stay Motion at 8, ¶ 25.

[21]<u>Exxon Mobil</u>, 544 U.S. at 292-93.

[22]657 F.App'x 808 (10th Cir. 2016).

in federal court until *after* the state court judgment was entered and *after* that judgment was affirmed on appeal. Furthermore, after Flanders, the Tenth Circuit reiterated that "'[f]ederal jurisdiction is not barred by the Rooker-Feldman doctrine if [the federal] suit "was filed before the end of the state courts' appeal process."'"[23] Because Renfrow's appeal of the UFTA Judgment to the Oklahoma Supreme Court remains pending, this Court's jurisdiction over whether the UFTA Judgment infringed on Renfrow's discharge is not barred by Rooker-Feldman.

Exxon Mobil is settled law that is precisely applicable to the circumstances of this case. Movants have no likelihood of succeeding on their Rooker-Feldman defense.

Likewise, applicable preclusion law is not unsettled. Oklahoma preclusion law applies to judgments, like the UFTA Judgment, entered by Oklahoma state courts.[24] The Oklahoma Supreme Court has set forth four elements that must be established before a litigant is precluded from litigating an issue in a subsequent proceeding. The first element is the existence of a "valid, final judgment."[25] A final judgment is one "in which a timely and properly perfected appeal has been acted on by the highest court whose review has been sought."[26] Renfrow's appeal of the UFTA Judgment has not yet been "acted on" by the Oklahoma Supreme Court, and therefore it is not a final judgment for the purposes of

---

[23] Montero v. Tulsa Airport Improvements Trust, 770 F.App'x 439, *440 (10th Cir.) (*quoting* Chapman v. Oklahoma, 472 F.3d 747, 749 (10th Cir. 2006) (*quoting* Guttman v. Khalsa, 446 F.3d 1027, 1029 (10th Cir. 2006))), *cert. denied* 140 S.Ct. 506 (2019).

[24] See Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985).

[25] Salazar v. City of Oklahoma City, 1999 OK 20, 976 P.2d 1056, 1060 n.6.

[26] Nealis v. Baird, 1999 OK 98, 996 P.2d 438, 459.

issue preclusion under Oklahoma law. Accordingly, Movants cannot establish even the first element required to succeed on appeal of this Court's rejection of their issue preclusion defense.

Relatedly, Movants argue that this Court erred in finding that the UFTA Judgment violated the discharge injunction because the jury in the State Court Case was instructed not to award damages for prepetition transfers.[27] Because it is impossible for Movants to establish preclusion, however, Renfrow was not precluded from offering, and the Court was not precluded from admitting and considering, evidence relevant to the timing of the supposed fraudulent transfers to determine whether the UFTA claim had been discharged.

Movants also argue, without any authority, that the Court erred in applying federal bankruptcy law to determine whether Grogan's claims for alleged fraudulent transfers arose prepetition (discharged) or postpetition (not discharged).[28] The law is settled in the Tenth Circuit that for the purpose of determining whether a claim or debt arose prepetition, and thus is discharged, "a [prepetition] claim will exist if some pre-petition conduct has occurred that will give rise to liability."[29] Movants contend that the Oklahoma UFTA governs when a "transfer" is made, and in this case, the UFTA would deem the transfers Grogan sought to recover to have been made "immediately before the commencement" of their UFTA action,[30] *i.e.*, on August 1, 2017, the date they amended the petition to add the

---

[27] Third Stay Motion at 8-9, ¶ 26.

[28] Id. at 9-10, ¶ 28.

[29] In re Parker, 264 B.R. 685, 697 (B.A.P. 10th Cir. 2001), *aff'd,* 313 F.3d 1267 (10th Cir. 2002).

[30] Third Stay Motion at 10, ¶ 28, *citing* 24 O.S. § 118. Movants also cite 11 U.S.C.

10

UFTA claim in the State Court Case. The UFTA does not purport to establish when a "claim" arises for the purpose of determining whether the claim is discharged in bankruptcy, however. The timing of the *conduct* giving rise to the claim governs whether a claim is discharged. The fictional transfer created by the UFTA does not supersede settled bankruptcy law.[31]   Movants have not shown that they are likely to prevail on their appeal of this issue.

Movants complain that the Court "refused to allow Defendants to have discovery on [Renfrow's] pre-existing mental health conditions." [32] In the Discharge Violation Litigation, Renfrow sought, as an element of compensatory damages, compensation for the anxiety, stress, and emotional anguish suffered as a result of Movants' post-discharge reanimation of the State Court Case. Defendants sought to compel Renfrow to sign a blanket release of her HIPAA privacy protections to allow Defendants to obtain all medical, prescription drug, and mental health records for three years preceding the Discharge Violation Litigation, as well as records created thereafter, arguing such information was relevant to causation. Defendants failed to justify their overbroad and

---

§ 548 as *federal* authority for this proposition. Section 548 authorizes a bankruptcy trustee to avoid certain prepetition fraudulent transfers for the benefit of the bankruptcy estate. That section, which confers special powers on a bankruptcy trustee, is clearly inapplicable in this case. Furthermore, contrary to Movants' contention, Section 548 does not treat prepetition transfers as having occurred post-petition.

[31]Under Movants' theory, any creditor wishing to assert a UFTA claim against a debtor based upon a *prepetition* transfer could, after the claim was discharged, commence a post-discharge UFTA action to recover the same transfer by asserting that under Oklahoma's UFTA, the prepetition transfer is deemed to have occurred post-petition. It should go without saying that state law cannot revive discharged claims. But that is exactly what Movants argue herein.

[32]Third Stay Motion at 9, ¶ 27.

intrusive discovery requests, however. Renfrow voluntarily waived her patient/therapist privilege and allowed Defendants access to the therapist she visited *after* Defendants amended the petition in the State Court Case and provided them with treatment records. The Court found that any perceived benefit to compelling Renfrow to waive HIPAA protections and produce three years of medical and mental health records was grossly outweighed by the potential harm to Renfrow's privacy interests.[33] Courts have wide discretion in handling pretrial discovery disputes, and appellate courts review discovery rulings for abuse of discretion.[34] Movants have not made any showing that the Court abused its discretion in denying Defendants' motion to compel discovery.

The Movants complain that the undersigned committed error in failing to recuse from hearing this matter.[35] The denial of a motion to recuse is reviewed for an abuse of discretion.[36] For the reasons stated in the Order Denying Defendants' Motion to Disqualify,[37] Movants are unlikely to show that the Court abused its discretion. Applying settled Tenth Circuit law, the Court concluded it was not required to recuse for bias or partiality if the judge's opinion is based solely on information obtained during the course of judicial proceedings. Movants failed to establish that any opinion the Court may have had of any of the litigants or counsel was derived from an extrajudicial source. In

---

[33] See Transcript of Hearing on Defendants' Motion to Strike Plaintiff's Emotional Distress Claim or, Alternatively, Motion to Compel (Doc. 65) (bench ruling).

[34] Willner v. Univ. of Kansas, 848 F.2d 1023, 1029 (10th Cir. 1988).

[35] Third Stay Motion at 9, ¶ 27.

[36] Willner, 848 F.2d at 1026.

[37] Doc. 74.

addition, the Movants' motion to recuse, having been filed a week before trial, was untimely.

Likewise, Movants have not demonstrated a likelihood that the Court abused its discretion in denying their motion to disqualify Ron Brown as counsel for Renfrow on the ground that he was also a witness.[38]  Notwithstanding that Movants knew for months that Brown intended to testify, they waited until the week before trial to seek his disqualification.[39]  Again, Movants' motion was not timely asserted, and granting the motion would have caused substantial prejudice to Renfrow.

Finally, Movants claim that this Court committed reversible error in applying the <u>Taggart</u> standard on remand. Based upon the evidence presented at the trial on the merits, and the findings of fact articulated in the Memorandum Opinion, this Court found that Movants did not reasonably attempt to comply with the discharge injunction, nor did they act in good faith in pursuing the UFTA claim.  There is no "fair ground of doubt" that the discharge injunction prohibited Movants from seeking to collect a discharged debt by knowingly employing the manipulative, deceitful, and oppressive tactics that led to the void UTFA Judgment in the State Court Case.

Accordingly, Movants have not made "a strong showing" that they are likely to succeed on the merits of their appeal.

---

[38] Third Stay Motion at 9, ¶ 27.

[39] Order Denying Defendants' Motion to Disqualify Ron Brown (Doc. 81).

B. <u>Will Movants be irreparably harmed in absence of a stay?</u>

Movants contend that "denial of a stay of the Court's Judgment ordering Defendants to vacate the [UFTA Judgment] and dismiss the [State Court Case] pending appeal will effectively deny Defendants their appeal of this Court's Judgment; thus, Defendants will be irreparably harmed."[40] They argue that if they must vacate the UFTA Judgment, they will have "irrevocably lost that judgment and will not be able to revive it or enforce it, and the appeal will have been for naught because Defendants will not be able to get their judgment back."[41] First, it is relevant to note that the UFTA Judgment was entered solely in favor of the trust of which Grogan is trustee. AHN is not a judgment creditor and will lose nothing if the UFTA Judgment is vacated.

Movants also complain they would suffer "significant financial loss for costs and fees expended taking the [State Court Case] to trial, obtaining the [UFTA Judgment], and then defending that judgment on appeal."[42] Again, AHN will not suffer financial loss if the UFTA Judgment is vacated. AHN has been paid.

AHN contends that it will be placed in an ethical dilemma if it must advise Grogan to vacate the UFTA Judgment notwithstanding AHN's belief in its validity.[43] Grogan need not look to AHN for advice on whether she should comply with the Judgment, however, because she is currently represented by the Franden Farris firm. In any event, AHN fails

---

[40]Third Stay Motion at 6, ¶ 15.

[41]<u>Id</u>. at 5, ¶ 13. AHN does not have a judgment against Renfrow. The UFTA Judgment was entered solely in favor of the Trust of which Grogan is trustee.

[42]Third Stay Motion at 6, ¶ 16.

[43]Motion at 6-7, ¶¶ 18-20.

14

to provide *any* authority that its ethical concerns are relevant to the Court's analysis of "irreparable harm."

Movants finally contend that in absence of a stay, their appeal of the Judgment and Remand Order will be moot.[44] An appeal becomes moot only if the appellate court "cannot grant any effectual relief whatever in favor of the appellant. The available remedy, however, does not need to be fully satisfactory to avoid mootness. To the contrary, even the availability of a partial remedy is sufficient to prevent [a] case from being moot."[45] The Judgment herein includes both injunctive and monetary components. Movants do not, and cannot, contend that they will suffer irreparable harm if enforcement of the money judgment is not stayed. AHN has not shown that it would be harmed at all if the injunctive relief is not stayed. And even if Grogan's UFTA Judgment could not be reinstated, she has not established that an appellate court could not fashion *any* effectual relief if she prevailed on appeal.

    C.    <u>Will Renfrow be substantially injured by imposition of a stay pending appeal?</u>

By virtue of this Court's discharge order, Grogan's claims against Renfrow were discharged in June 2017. Renfrow has not had the benefit of that relief. Since August 1, 2017, the day Grogan revived the State Court Case, Renfrow has, notwithstanding her discharge, been forced to retain and pay counsel to litigate against Grogan and AHN on numerous fronts (i.e., in the State Court Case which included a three-day jury trial, post-

---

[44] Third Stay Motion at 6, ¶ 17.

[45] <u>Calderon v. Moore</u>, 518 U.S. 149, 150 (1996) (quotation marks and citations omitted).

judgment litigation, and appeal, and simultaneously, in the Discharge Violation Litigation, which included substantial pretrial litigation, a two-day trial, the first appeal, remand, and now this second appeal). This Court has already found, by clear and convincing evidence, that the alleged transfers of furniture, equipment, patient files, and goodwill that Movants led the jury to believe were fraudulently made could only have occurred prepetition. This Court has found that Movants acted with reckless indifference to Renfrow's discharge and inflicted monetary and emotional damage on her. This Court has declared the UFTA Judgment void because it imposes personal liability on Renfrow for discharged debt. The existence of the UFTA Judgment *continues* to offend the discharge order and injunction, and remains a stain on Renfrow's reputation, credit, and ability to obtain permanent employment. Postponing the vacation of the UFTA Judgment and the dismissal of the State Court Case until the current appeal is concluded will continue to substantially harm Renfrow.

    D.    <u>Where the public interest lies</u>.

As the United States Supreme Court held in one of its most cited bankruptcy cases,

> One of the primary purposes of the Bankruptcy Act is to "relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." [citation omitted]. This purpose of the act has been again and again emphasized by the courts as *being of public as well as private interest*, in that it gives to the honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy, a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt.[46]

---

[46] Local Loan Co. v. Hunt, 292 U.S. 234, 244 (1934) (emphasis added).

Respect for the bankruptcy discharge is diminished if it is not vigorously protected and enforced by the courts. Suspending the protection of the discharge to allow a creditor to appeal a judgment that holds the creditor in contempt of the discharge order and statutory injunction is against the public interest.

    E.    <u>Balancing the equities</u>.

The equities do not favor granting Movants a stay of enforcement of the Judgment. AHN is an insured professional entity, and Grogan's liability on the Judgment is in her capacity as trustee of her deceased father's trust. Renfrow is an individual, a former debtor who exited her bankruptcy with no assets and a discharge that has not been respected.

Staying enforcement of the Judgment would place Movants in the same position than they were *before* the Court found them to be in willful contempt of the discharge injunction. Renfrow, on the other hand, has yet to enjoy any benefit from either her discharge or the Judgment vindicating her discharge. The UFTA Judgment—a judgment for fraud that this Court has determined is void—remains on record against her. The substantial harm a stay would impose on Renfrow outweighs Movants' interest in maintaining the "status quo." Movants have not established that the equities weigh in their favor.

**IV.**    **Conclusion**

"A stay is not a matter of right, even if irreparable injury might otherwise result. Instead it is an exercise of judicial discretion and the propriety of its issue is dependent

upon the circumstances of the particular case."[47] Under the circumstances of this case, after assessing the four factors and balancing the equities, the Court concludes that Movants have not made the substantial showing necessary to warrant a stay pending appeal. The Motion is therefore **denied**.

**SO ORDERED** this 20th day of August, 2021.

DANA L. RASURE, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT

---

[47] <u>Nken</u>, 556 U.S. at 433.